PINSON, Respondent, v. CAMPBELL, Appellant.

St. Louis Court of Appeals, April 2, 1907.

1. **ATTORNEY AND CLIENT:** Confidential Communications: Waiver. An attorney is incompetent to testify as to confidential communications made to him by his client both at common law and under the statutes, section 4659, Revised Statutes of 1899, but where a witness testified without objection to conversations had with his attorney, the attorney was competent to testify; the client waived his right to object to the testimony of the attorney respecting the same conversation.

2. **MALICIOUS PROSECUTION:** Constituent Elements: Malice and Want of Probable Cause. Malice and want of probable cause must coexist to warrant an action for malicious prosecution, and where it is shown that the prosecutor consulted the prosecuting attorney in good faith, communicated to him all the ascertainable facts and, acting on the attorney's advice, instituted a criminal proceeding, he is not liable in an action for malicious prosecution.

3. ————: ————: ———— Disputed Fact. Where in an action for malicious prosecution it was a disputed question whether the defendant communicated all the facts to the prosecuting attorney before beginning the prosecution for which he was sued, probable cause could not be presumed as a matter of law in favor of the defendant.

4. ————: Probable Cause: Definition. Probable cause which would be a defense in an action for malicious prosecution is properly defined as "a reasonable ground for suspicion supported by evidence sufficiently strong to warrant a cautious man in the belief that the person accused is guilty of the offense charged."

5. **SELLING MORTGAGED PROPERTY:** Intent to Defraud. The offense of selling mortgaged property in violation of section 1933, Revised Statutes 1899, is not complete without an intent to defraud the mortgagee or purchaser.

Appeal from Dent Circuit Court.—*Hon. L. B. Woodside,*
Judge.

AFFIRMED.

A. E. *McGlashan* for appellant.

(1)   It is a complete defense to an action for malicious prosecution that defendant before commencing the prosecution, presented the matter to the county attorney all the facts, and then in good faith followed his advice, it completely rebuts the allegation of the want of probable cause and of itself shows probable cause. 1 Joyce on Damages, sec. 440. 441; Biglow on Torts, sec. 22; 3 Sutherland on Damages (2 Ed.), secs. 124, 708; Cooley on Torts (2 Ed.), sec. 183; Scheppel v. Norton, 38 Kan. 567; Rice v. Saunders, 26 N. C. C. P. 27; Laughlin v. Clawson, 27 Pa. St. 328; Nolen v. Kauffman, 70 Mo. App. 651; Warren v. Flood, 72 Mo. App. 205. (2)   Advice of the prosecuting attorney is conclusive of probable cause and is a complete defense. Under such circumstances action can not be maintained. Smith v. Austin, 49 Mich. 268; Senoir v. Marlin, 10 Tex. Civ. App. 376; Sebastian v. Cheney, 86 Tex. 497; Eastbrook v. Keys, 9 Col. App. 190; Moffit v. C. R. O. & P. R. R., 57 Kan. 912; Wakeley v. Johnson, 115 Mich. 285; Peterson v. Rusdorph, 49 Neb. 527; Pipkin v. Haucke, 15 Mo. App. 373, 35 Ill. 187, 98 Ind. 217.   (3)   Advice of counsel negatives malice. 7 Am. & Eng. Ency. Law (2 Ed.), 901; Sparkling v. Conway, 6 Mo. App. 283; 19 A. & E. Ency. Law (2 Ed.), art. 12, sec. 2; 109 Cal. 365; 50 Mo. 83; 38 Mo. 13 and 258; 123 Cal. 26. (4)   J. J. Cope, attorney for defendant, should not have been allowed to testify. R. S. 1899, sec. 4659; Greenleaf on Evidence, sec. 240; State v. Dawson, 90 Mo. 154.   (5)   Justice requires legal advice to be a privileged communication which the law will not permit the attorney to disclose. Henry v. Buddeke, 81 Mo. App. 365; Hamis v. England, 50 Mo.

App. 333; Deuser v. Walkup, 43 Mo. App. 627; Tyler v. Hall, 106 Mo. App. 313. (6) Client only waives his privilege when he voluntarily in his examination in chief testifies to same. Oliver v. Pate, 43 Ind. 132; Cahorn's Case, 21 Grant, 822; Elridge v. State, 126 Ala. 63.

*Wm. P. Elmer* for respondent.

(1) Plaintiff's acquittal of the criminal charge was prima facie want of probable cause. Sharpe v. Johnson, 76 Mo. 674; Nolen v. Kaufman, 70 Mo. App. 651; Stubbs v. Mulholland, 168 Mo. 74. (2) Instruction numbered 3 correctly declares the law. 19 Am. and Eng. Ency. Law (2 Ed.), 657, 659. (3) Advice of prosecuting attorney is not a complete defense. Such advice must be sought in good faith and without any desire to injure the plaintiff. Vansickle v. Brown, 68 Mo. 634; 19 Am. and Eng. Ency. Law (2 Ed.), 685. (a) Defendant must have acted in good faith. 19 Am. and Eng. Ency. Law (2 Ed.), 688. (b) Same is question for jury. 19 Am. and Eng. Ency. Law (2 Ed.), 689.

STATEMENT.—The action is to recover damages for malicious prosecution. The petition alleges, in substance, that defendant, in 1904, appeared before the clerk of the circuit court of Dent county on three successive occasions and willfully, maliciously and without probable cause made affidavits charging plaintiff with unlawfuly and feloniously selling to defendant an undivided one-half interest in goods, wares and store fixtures covered by a chattel mortgage, which plaintiff had theretofore executed to one T. L. Collier; that information predicated on each of said affidavits were filed in the circuit court of said Dent county and warrants for the arrest of plaintiff were issued thereon, upon each of which plaintiff was arrested and required to and did enter into recognizances for his appearance in the Dent

Circuit Court to answer said informations; that on the last of said informations plaintiff was put on his trial in the Dent Circuit Court, on December 2, 1904, and found "not guilty" by a jury.

The answer admitted that three sucessive affidavits were made by defendant, charging plaintiff with having fraudulently sold defendant an interest in goods, wares and store fixtures, covered by a chattel mortgage theretofore executed to T. L. Collier; and alleged that by inadvertence defendant signed the first information prepared by the prosecuting attorney and the latter the first affidavit, necessitating a new and second affidavit and information which were filed; that the second information was quashed, whereupon the third affidavit and information were filed, upon which defendant was tried and acquitted. As a defense the answer alleges the following:

"Defendant further states that before he ever filed the first complaint against the plaintiff, he consulted with the prosecuting attorney of Dent county, Missouri, to-wit, G. W. Hodges, with a view to obtain his advice as to the liability of said plaintiff to criminal prosecution, and that he communicated to such prosecuting attorney all the facts within his knowledge or that he might have learned by reasonable diligence on the guilt or innocence of the plaintiff of said crime and that the prosecuting attorney gave it as his legal opinion that the said plaintiff was liable to criminal prosecution and that thereupon defendant decided to institute prosecution against plaintiff, in good faith and in pursuance of the advice and opinion expressed by the said prosecuting attorney, and that said prosecuting attorney then prepared a complaint for defendant to sign and swear to and that defendant left said complaint with the prosecuting attorney and had nothing further to do with the matter, except signing the new complaints as hereinbefore stated; that the prosecuting attorney himself, as an of-

ficial, attended to the preparation of his official informations and the filing of all papers in the cause with the circuit clerk and the procuring the issuance and service of warrant therein.

"Defendant states that said prosecution was not malicious and was not without probable cause; that defendant had good reason to believe and did believe the plaintiff guilty of the charge alleged against him in said complaint."

A verdict signed by eleven of the jurors was returned, finding the issues for plaintiff and assessing his actual damages at one hundred and fifty dollars, and that he was not entitled to exemplary damages. Timely motions for a new trial and in arrest of judgment proving of no avail, defendant appealed.

It developed on the trial that plaintiff was conducting a small grocery store and meat shop, in the city of Salem, Mo., and had given a mortgage on the fixtures and furniture of his establishment to T. L. Collier. Plaintiff sold one-half his interest in the grocery store and meat shop to defendant for three hundred and five dollars. Defendant paid two hundred and five dollars of the purchase price in cash and gave his note for ninety-five dollars. The firm of Pinson & Campbell borrowed one hundred and twenty-five dollars from a Salem bank. In about three months after his purchase, defendant sold his interest in the concern to O. S. Rouse for one hundred dollars cash, Rouse's note for one hundred dollars, and the note for ninety-five dollars defendant had given Pinson, and for the further consideration that Rouse and Pinson assumed the payment of the note of one hundred and twenty-five dollars to the bank. Pinson and Rouse mortgaged the store and shop to a St. Louis party for a debt they failed to pay, and were closed out under this and the T. L. Collier mortgage. The bank note for one hun-

dred and twenty-five dollars was not paid, and the evidence shows both Pinson and Rouse are insolvent.

Plaintiff testified that he told defendant when he bought into the concern about the T. L. Collier mortgage and it was agreed that Campbell's note of ninety-five dollars should be applied to extinguish one-half of the mortgage; and when Rouse bought out defendant it was agreed that he (Rouse) would assume the payment of one-half of said mortgage. Defendant testified plaintiff did not mention the Collier mortgage to him and that he did not know of it and did not hear of it until about the time the mortgage was foreclosed and after the failure of Pinson and Rouse; that Pinson repeatedly promised to pay the bank note for one hundred and twenty-five dollars, but had not done so and Rouse refused to pay it because of the mortgage. Defendant also testified that he communicated all the facts to the prosecuting attorney of Dent county and was advised by him that Pinson had violated the criminal law, and that he acted on this advice when he made the first affidavit against Pinson; and that the two subsequent affidavits were made on the advice of the prosecuting attorney to cure defects in the proceedings.

W. H. Hodges, prosecuting attorney of Dent county, in respect to defendant's communications to him, testified as follows: "Mr. Campbell came to my office some time prior to this arrest,—I don't just know how long it was, and the first time that he came into my office, as I remember it now, he asked me in substance what the constituent elements were to the crime of selling mortgaged property, and I told Mr. Campbell that the property must be sold without the consent of the mortgagee and without telling the person to whom he sold the property that it was mortgaged and with intent to cheat and defraud. Mr. Campbell told the circumstances of the deal between Mr. Pinson and himself and he related to me that Mr. Pinson had sold him (Mr. Campbell) a half

interest in a stock of goods here in town and after he had purchased them and after he had subsequently sold them he found out there was a mortgage. Mr. Pinson had never told him there was any mortgage on the property. Then I questioned Mr. Campbell as to who the mortgagee was or who had to be benefited by that mortgage, and he told me it was Mr. Collier, and I asked him if Mr. Collier had given Mr. Pinson his consent to sell the property, and he said he thought not and he said, in fact, Mr. Collier had not given his consent; that Mr. Collier had told him (Campbell) that he had not given his consent, and I told Mr. Campbell that there was another element necessary to make it a crime, that these things were necessary and that the other element was that he must have done it with the intent to cheat and defraud, and I remarked to him, that there was a matter that could not be arrived at as well as the others and Mr. Campbell said, 'What other purpose could he have had in view,' and I told him that a man's intent was gathered from his act and it was fair to presume that he was trying to defraud him, and I told him that he had plenty of time about this and if he had committed a crime it would not be barred for a long time, and I told him that I was very busy and did not have time to investigate it any further that day. . . . Afterwards, again, Mr. Campbell came to me on the day these papers were issued and I was in a great hurry, and Mr. Campbell was in a great hurry and said he, 'I want to go over to the office with you and have these papers issued for Pinson's arrest,' and I said, 'Well, I am awfully busy right now,' and I told him that the matter was still standing just as it was and I told him that I was very busy and Campbell said that Pinson was going to leave on the noon train for St. Louis, and I told him that we had better issue the papers then and I came down to the office and drew the complaint up and drew the information."

T. L. Collier testified that Wm. Pinson had never talked to him about selling a half interest in his business to Joseph G. Campbell until after the trade was made; that Pinson never told him he was to sell an interest in the mortgaged property and never asked his permission or consent to sell the same.

Campbell employed J. J. Cope, Esq., to assist in the criminal prosecution. Over the objection of defendant, Cope testified that after talking to the prosecuting attorney about the case, he saw Campbell and told him "that under the facts in the case, I do not believe that we could convict Mr. Pinson for the charge he had against him. I first told him that the papers were not any good and Mr. Campbell wanted me to go and see Mr. Hodges and get him to go and see if he could not get a settlement on the matter, and Mr. Hodges said that he would not do it but he would prosecute Mr. Pinson, but he would not settle any of his debts, and Mr. Campbell wanted me to see about settling them up and I went and saw Mr. Elmer and I could not get any settlement of the matter at all and I so told Mr. Campbell." Witness further testified as follows:

"Q. What debts was it that Campbell wanted settled up? A. The best I can remember it was the ones he detailed here on the stand, it was a note he said he had, the Rouse note, and there was one in the bank; I did not give very much attention. I was trying to get the men together and get a settlement. I did not exactly understand all the debts but I remember the Rouse note.

"Q. Was this conversation before the filing of the last information? A. Yes, sir, it was all prior to that time.

"Q. Do you remember of you and Mr. Campbell and Mr. Hodges going out of this court room into the prosecuting attorney's office and consulting about this case? A. Yes, sir.

"Q. I will ask you if at that time, if you told Mr. Campbell after the first information was dismissed that

he could not convict Mr. Pinson? A. I told Mr. Campbell, not at that time, but up here on the streets, that he could never convict Mr. Pinson of the charge they had against him and I told him that he had not lost anything and I said you can't convict Mr. Pinson of a felony in this case.

"By the Court: Q. Was that statement that you have told made before the filing of the last information? A. Yes, sir, it was before court met. It was after the first information had been filed and before the last two informations had been filed."

BLAND, P. J. (after stating the facts).—1. It is contended that Cope was not a competent witness to testify against defendant. Cope's testimony was in respect to confidential communications made to him by Campbell, his client, for which reason Cope was an incompetent witness under the statute (sec. 4659, R. S. 1899) and at common law. But a client may unseal the lips of his attorney (Riddles v. Aikin, 29 Mo. l. c. 454) by testifying himself to the confidential communications, or by offering the attorney as a witness to prove the communications. [23 Am. and Eng. Ency. of Law (2 Ed), p. 82, par. C.] On cross-examination, Campbell testified, without objection, to employing Mr. Cope after the filing of the second information, to assist in the prosecution of Pinson and, without objection, repeated all the conversations he had with Mr. Cope, as his attorney, in respect to the criminal prosecution; by so doing, we think it is clear he waived the incompetency of Mr. Cope to testify.

2. Defendant moved for a peremptory instruction to the jury to find for him, and contends the court erred in refusing to grant the instruction for the reason Campbell communicated all the facts to the prosecuting attorney and instituted and continued the prosecution on his advice. Malice and want of probable cause must co-

exist to warrant an action for malicious prosecution, and where it is shown that the prosecutor consulted the prosecuting attorney in good faith, communicated to him all the ascertainable facts and, acting on his advice, instituted the criminal proceeding, he should be exonerated. [1 Joyce on Damages, sec. 441.] The finding of an indictment by a grand jury, or the commitment of an examining magistrate, is prima facie evidence of probable cause. [Sharpe v. Johnston, 76 Mo. 660; 1 Cooley on Torts (3 Ed), p. 328.] On parity of reason, the filing of an information by a prosecuting attorney on his own information and belief is prima facie evidence of probable cause, but not so when the information is predicated on the affidavit of the complaining witness. In Sharpe v. Johnston, 59 Mo. l. c. 576, it is said: "Probable cause is a mixed question of law and facts. When the facts are undisputed, it is the duty of the court to declare their legal effects." There is a dispute as to whether or not Campbell communicated all the facts to the prosecuting attorney. He maintained that Pinson did not inform him of the mortgage when he bought a half interest in the business. Pinson swore he did inform him of its existence. This disputed question of fact was vital to the successful prosecution of the criminal case, hence it would have been error for the court to have declared, as a matter of law, that the evidence conclusively showed there was probable cause for the prosecution.

3. It is contended that the court did not instruct the jury what facts, if proven, would constitute probable cause. Counsel for defendant must have overlooked instruction No. 3, given for plaintiff, which reads as follows:

"The court instructs the jury that if they believe from the evidence, that the defendant had probable cause to institute the criminal proceedings against the plaintiff, then the plaintiff cannot recover. Probable cause

is defined to be a reasonable ground for suspicion, supported by circumstances and evidence sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense of which he is charged."

This instruction correctly defined the meaning of probable cause and it was for the jury to determine from all the facts and circumstances shown in the case whether or not Campbell had probable cause to believe Pinson was guilty of the crime charged at the time the several affidavits were made.

4.    Defendant objected and excepted to the giving of the following instruction:

"9.    The court instructs the jury that before the plaintiff could be guilty of the criminal charge placed against him by Campbell, he would have to sell the mortgaged property and second, without informing Campbell that said property was mortgaged, and third, such sale must have been made with the intention on the part of Pinson of cheating, wronging and defrauding Campbell thereby."

The contention is that it was a sufficient defense for defendant to prove that plaintiff had sold the mortgaged property without the consent of Collier, the mortgagee, and without informing defendant, the purchaser, of the existence of the mortgage, and hence the instruction imposed a burden on defendant that the law does not warrant, that is, to prove Pinson's intent to cheat, wrong and defraud.   The section of the statute (R. S. 1899, sec. 1933) on which Pinson was prosecuted, provides: "Every mortgagor or grantor in any chattel mortgage or trust deed of personal property who shall sell, convey or dispose of the property mentioned in said mortgage or trust deed or any part thereof, without the written consent of the mortgagee or beneficiary, and without informing the person to whom the same is sold or conveyed . . . for the purpose of defrauding the mortgagee, trus-

tee or beneficiary . . . shall be deemed guilty," etc.
So the offense, under the statute, cannot be committed
without an intent to defraud the mortgagee, or pur-
chaser.

No reversible error appearing, the judgment is af-
firmed. All concur.