CHARLES W. TETWILER, Administrator of the Estate of Thomas Allen, Appellant, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

Division One, March 29, 1912.

1. NEGLIGENCE: Master and Servant: Shelter Shanty: Master's Duty to Yardmen. To reach the shelter shanty in defendant's railroad yards, the deceased (a workman in the yards) had to pass through a narrow opening between a string of cars standing on a nearby track. While crossing· to reach this shanty at midnight, to eat his lunch therein, he was killed by the negligence of defendant's servants, who moved an engine without ringing the bell. Defendant contends that the deceased while so crossing was engaged upon an errand personal to himself and unconnected with his employment. *Held*, the shanty, for all the purposes of its installation, was a part of the railway plant, and it was the defendant's duty to protect the men in its use.

2. ———: ———: Running Engine in Switch Yard: Whistle and Bell not Sounded: Evidence. Irrespective of statute, the starting or running of a switch engine in a busy switch yard without ringing the bell or blowing the whistle, is evidence of negligence.

3. ———: ———: Assumption of Risk. A servant assumes all the risks which are ordinarily incident to the employment, but his master's negligence is not incident to the employment.

4. ———: ———: Contributory Negligence. When a shelter shanty in a railroad yard is so placed that workmen, in order to reach it, have to cross the track where the deceased met death, it comes of poor grace from the railroad company to say that the deceased was guilty of contributory negligence in crossing that track.

5. ———: Presumption of Due Care: Defenses: Contributory Negligence. The presumption of due care always obtains in favor of a plaintiff in an action for damages for injuries caused by the alleged negligence of another. Contributory negligence is a matter of defense, and the plaintiff need neither allege nor prove that he was without fault. Whenever this defense is made he is entitled to have it submitted to the jury, unless, by his own admission, or by other evidence upon which he depends to fix the liability of the defendant, it is conclusively shown that facts exist that are inconsistent with the presumption of due care.

Tetwiler v. Railroad.

*Held,* by GRAVES, P. J., with whom a majority concur, that the presumption of due care is a presumption of fact—one which takes flight upon the appearance of the facts themselves—and since in this case there was an eyewitness to the accident who testified, there should not be added in the scale a presumption of fact which has been displaced by proof.

6. ————: **Contributory: Evidence.** *Held,* that the evidence in this case justifies the submission to the jury of the question of contributory negligence.

7. ————: **Master and Servant: Assumption of Risk: Master's Negligence: Instructions.** The court instructed the jury that the deceased, who was killed while crossing a track to reach a shelter shanty, assumed, as incident to his employment in the defendant's yards, the risk of being struck by the cars while attempting to cross the tracks. *Held,* erroneous instruction. The deceased did not assume the risk of being struck by the cars when the striking should be caused by defendant's negligence.

8. ————: **Instructions: Crossing Railroad Track.** The deceased was killed while attempting to pass through an opening in a string of cars which was suddenly closed by the negligence of defendant's servants, who moved an engine without ringing the bell. The jury were instructed that if they found there was any "obstruction" which prevented the deceased from seeing whether the cars were moving it was his duty to "stop" and listen before attempting to pass between them; and that if they found that by waiting or exercising care he could have ascertained that the cars were about to be moved, and he failed to exercise such caution, then their verdict must be for the defendant railroad. *Held,* the instruction was erroneous for three reasons: (1) There was no evidence of such "obstruction;" (2) it assumed that, by stopping, the deceased would have been in a better position to hear, or would have heard, some sound about which the record is silent; and (3) it is equivalent to a direction to find for the defendant because the deceased did not wait, whereas, in fact, the chances as he approached the track were equally good that the moment of waiting would be the fatal one.

Appeal from Butler Circuit Court.—*Hon. J. C. Sheppard,* Judge.

REVERSED AND REMANDED *(with directions).*

*David W. Hill* for appellant.

(1) The switchmen in failing to give any warning to Allen, who was about to pass between uncoupled freight cars on the repair track, and the engineer, who was in plain view of the torches of Allen and Sheets, in backing up the engine without any ringing of the bell or sounding of the whistle or other warning, were guilty of gross negligence. 4 Thompson on Negligence, sec. 4489, p. 552; Black v. Railroad, 172 Mo. 177; Penney v. Stock Yards Co., 212 Mo. 328; Rinard v. Railroad, 164 Mo. 274; Wilkins v. Railroad, 101 Mo. 105; Cambron v. Railroad, 165 Mo. 543; Gaska v. Car & Foundry Co., 127 Mo. App. 169; Reagan v. Railroad, 93 Mo. 348. (2) There is no assumption of risk in this case, and it was harmful error to instruct the jury in that regard, as requested by the defendant. 4 Thompson on Negligence, sec. 4613, p. 631; Curtis v. McNair, 173 Mo. 280; Blanton v. Dold, 109 Mo. 64; Settle v. Railroad, 127 Mo. 336; Wendler v. Furnishing Co., 165 Mo. 527; Pauck v. Dressed Beef Co., 169 Mo. 467; Jewell v. Bolt & Nut Co., 231 Mo. 194; Obermeyer v. Chair Co., 229 Mo. 109; George v. Railroad, 225 Mo. 405; Burkard v. Rope Co., 217 Mo. 481; Zeis v. Brewery Association, 205 Mo. 652; Charlton v. Railroad, 200 Mo. 433. (3) There was absolutely no evidence of any contributory negligence, and the court's instructions to the jury in this regard, as requested by the defendant, were confusing, misleading and grossly prejudicial. Rinard v. Railroad. 164 Mo. 288. (4) The giving of numerous instructions in a case of this character has been condemned by this court. Blanton v. Dold, 109 Mo. 77. (5) In the fourth instruction given to the jury at the request of the defendant, the court told the jury: "If you find that by waiting, or exercising care on his part, he could have ascertained that the cars were about to be moved, and that he failed to exercise such caution and his death resulted

in consequence of being struck by the cars, then your verdict must be for the defendant.'' Of course, if he had waited he would not have been struck. This instruction was tantamount to peremptorily instructing the jury to return a verdict for the defendant, as was said in the case of Dlauhi v. Railroad, 139 Mo. 297: ''The court had about as well have peremptorily instructed the jury to return a verdict for defendant, as they could not have done otherwise under the instruction as given.''

*R. T. Railey, J. F. Green* and *N. A. Mozley* for respondent.

(1) Deceased, on his own responsibility and without paying any heed to his safety, deliberately walked in front of the moving cars and was injured. Under such circumstances, his contributory negligence would bar a recovery, even had it been the duty of defendant's engineer to warn him of the approach of said cars. Taylor v. Railroad, 86 Mo. 462; Maher v. Railroad, 64 Mo. 275; Zimmerman v. Railroad, 71 Mo. 488; Hayden v. Railroad, 124 Mo. 573; Degonia v. Railroad, 224 Mo. 564; Cahill v. Railroad, 205 Mo. 408; Loeffler v. Railroad, 96 Mo. 270; Prewitt v. Eddy, 115 Mo. 304; Hutchinson v. Railroad, 195 Mo. 546; Magee v. Wabash, 214 Mo. 546. (2) Deceased was familiar with the operation of the engine and cars in the yards where he worked and knew the dangers incident to passing over the tracks, and it was not respondent's duty to warn him of the movement of the cars which struck him. Evans v. Railroad, 178 Mo. 514; Loring v. Railroad, 128 Mo. 359; Aerkfetz v. Humphreys, 145 U. S. 418; Elliott v. Railroad, 150 U. S. 245; Hitz v. Railroad, 152 Mo. App. 687; Ginnochio v. Railroad, 155 Mo. App. 163; Davis v. Railroad, 159 Mo. 1. (3) There is no testimony in the record tending to show that respondent's engineer actually saw deceased in a po-

sition of peril in time to avoid the injury, and hence respondent is not liable on that ground. Ginnochio v. Railroad, 155 Mo. App. 163; Hitz v. Railroad, 152 Mo. App. 699; Evans v. Railroad, 178 Mo. 514. (4) Deceased assumed all of the ordinary risks incident to the moving and handling of the cars and locomotives of respondent when he undertook to go to a place in the yards where his duty did not call him. Williams v. Railroad, 119 Mo. 310; Evans v. Railroad, 178 Mo. 514; Loring v. Railroad, 128 Mo. 357.

BROWN, C.—This is an action under section 2864, Revised Statutes 1899, for the death of Thomas Allen, an employee of defendant, who is alleged in the petition to have been killed while passing between two of defendant's uncoupled freight cars, by the negligence of defendant in running one of the cars against him and crushing him between them. The answer was a general denial, a plea that the deceased was employed to work in and about the defendant's roundhouse and yards at Poplar Bluff and upon and about its engines, and that in accepting such employment he assumed all the risks incident thereto, and a plea that his death was the result of his own negligence in attempting to cross one of the railroad tracks in the yard in front of a moving train.

The evidence tended to show that the Poplar Bluff yards were extensive, consisting of eleven or twelve tracks, counting from the west side, then a shanty or shack consisting of a small room provided for the protection of the men from the weather. One witness, the engineer, testified that "it was put there for the protection and convenience of the fire knockers, who kept the oil for their torches in it, and ate their lunches there." Another witness, himself one of the fire knockers, describes it as "the house where we stay in from the time we go from one engine to another." On the

east side of this shanty was the track on which the accident occurred.    Bad order cars were set and repaired on it.    On the east side of this track were two others, with the coal chute, which was directly opposite the shanty, between them. The track in question approached and passed the shanty from the southwest, on a curvature to the left, to its connection north.

The accident occurred at eleven thirty o'clock in the night of January 9, 1908.    The deceased was a "fire knocker," his duty being to draw the fires from locomotives as they came in from their runs and take them to the roundhouse.    The nature of this work is such that it is done in pairs, and he and David Sheets, a witness, were "partners" in it.    Their duties were principally at the coal chutes opposite the shanty, where engines were coaled and the cinder pits were situated.    The roundhouse was in the neighborhood of one hundred yards in a southeasterly direction from the shanty, so that in approaching the latter from it, one would be approaching diagonally the railroad track.

At the time of the accident the deceased and his partner had taken an engine to the roundhouse, and were returning to the shanty where they intended to eat their midnight dinner.    From sixteen to twenty cars were standing on the track in question, where they had been put in from the north, and an opening left in about the middle of the string opposite the shanty, variously stated to be from three to six feet wide.    The car north of the opening was a box car upon the south end of which the carpenters had been at work that day putting in new "bumpers."    The drawbar had not yet been replaced, so that the car could not be coupled to another.    At the south side of the opening was a bad order coal car loaded with coal. Allen and his partner approached this opening with lighted torches.    An engine had been backed in at the north end of this track, and was slowly working

south running at the rate of about three miles per hour when in motion, without either ringing the bell or sounding the whistle when starting, or stopping, or at any other time, picking up cars as it came to them, and after making the coupling, starting for the next . one.

The approaching knockers could not see the engine because of a box car behind its tender, and its headlight was directed away from them, but the engineer, from his cab, could and did see the torches which they carried until they had approached to within thirty feet of the opening. There were, according to the witnesses who testified on that question, except the engineer, no switchmen visible on the east side of the track, which was the outside of the curve, nor on the cars, and one of them said that the switchmen came up from the west side after the accident, while the engineer testified that he was taking signals from his (the east) side of the cab.

The two fire knockers did not stop when they got to the opening, but entered it, and as they were passing through the "switch engine hit some cars above, and caught Allen between the cars," and crushed him so that he died in about half an hour. Rule 30 of the Standard Rules of the St. Louis, Iron Mountain & Southern Railway Company was introduced. It reads as follows: "The engine bell must be rung when the engine is about to move."

After the plaintiff's evidence was in, both parties rested, and the defendant asked the court to peremptorily instruct in its favor, which was refused. The court then, at its request, instructed the jury, among other things, that the deceased "by engaging in the employment in the yards of defendant, in Poplar Bluff, assumed and took upon himself all the risks incident to such employment, among which were the risks of being struck by the cars while attempting to pass upon and over the tracks of the defendant; and also it was

the duty of Thomas Allen before attempting to pass between the cars, to both look and listen, and exercise due caution to ascertain whether the cars were about to be moved; and if you find that there were any obstructions which prevented him from seeing whether they were moving, then it was his duty to stop and listen before attempting to pass between the cars; and if you find that by waiting or exercising care on his part, he could have ascertained that the cars were about to be moved and that he failed to exercise such caution and his death resulted in consequence of his being struck by the cars; then your verdict must be for the defendant.''

The verdict of the jury was for the defendant, and plaintiff has taken this appeal.

I.  The appellant assigns for error the giving of certain instructions on behalf of the appellee, the defendant below, and insists that the judgment against him should be reversed on that ground.  The appellee meets this position with the claim that although the evidence tended to prove negligence on its part contributing directly to the injury which is the foundation of the suit, it also proved conclusively that the appellant assumed the risk of this very accident in undertaking to perform the act from which it resulted.  If this contention proves to be well founded, it will not, of course, be necessary to examine the errors assigned by the appellant.

Although the issues were submitted to and determined by a jury, no evidence was introduced or offered by the defendant.  It must not be assumed, however, that in electing to stand upon the case made by plaintiff, it waived any advantage, for every witness shown to have known facts pertinent to the accident, all of them employees of the defendant, was introduced by the plaintiff and subjected to cross-examination.  In this process, the application of the

method known in therapeutics as suggestive treatment left nothing to be desired.

In defendant's argument stress is laid upon the assumption that at the time of the accident the plaintiff's intestate was crossing the railroad track upon an errand personal to himself and unconnected with his employment by defendant. This assumption is not justified by the facts. All the testimony upon the subject tends to prove that the building was constructed for just such purposes as the deceased and his companion were going to use it for at the time of the accident. It includes the direct statement that it was designed for the protection and use of these very employees whose work was immediately across the track upon which the accident occurred. It was not only a humane provision on the part of the company, but it is evident that it was consulting its own interest in providing shelter from the inclemency of such weather as was constantly to be expected at the season the accident occurred, and a convenient and safe storage for oil and other things required in the performance of the work.

The shanty, for all the purposes of its installation, was as much a part of the railway plant as was the coal chute across the track, around which these men worked; and it was as much the duty of the defendant to protect the men in its use as in the performance of any of their other duties. The crossing of the track in question having been made not only a necessary but an indispensable incident to its use, it devolved upon the defendant to see that its comforts and convenience should not become bait to a trap at its entrance. A general rule of the defendant provided this protection in a measure which would seem to be sufficient under ordinary circumstances. The printed rule, in the hands of its engine men, provided that "the engine bell must be rung when the engine is about to move."

The defendant had peculiar duties growing out of its relation to its employees, none of which were more important than that which required it to use reasonable care to furnish them a safe place to work, and in no situation is the performance of this duty more important than in an active railroad yard, where they are constantly menaced by the death-dealing appliances of the master. This necessity was expressed by the Supreme Court of Nebraska in Union Pacific Ry. Co. v. Elliott, 54 Neb. 299, 305, as follows: "Irrespective of any statute on the subject, the starting or running of a switch engine, in a switch yard filled with a network of tracks upon which cars and engines are constantly moving and in which yardmen are constantly at work, without the ringing of a bell or the blowing of a whistle, is evidence of negligence." This statement is adopted and expressed as the rule by Mr. Thompson in his work on Negligence, section 4489. The rule of the common law so stated was well expressed in the printed rule of the company, and it was negligence on the part of defendant to disregard it.

It is said by the defendant that the deceased assumed the very risk that proved fatal in this case, but it is a complete answer to this, that while the servant assumes all the risks which are ordinarily incident to the employment, the negligence of his master is not one of those incidents. [Jewell v. Bolt & Nut Co., 231 Mo. 176, 194; George v. Railroad, 225 Mo. 364, 406 *et seq.*, and cases cited.] It is not contemplated in his contract of employment, but is, in such cases as this, a breach of the implied condition of that contract that the employer will take ordinary care to furnish the employee a safe place to work.

While the doctrines of assumed risk and contributory negligence have points of resemblance, they are, in fact, distinct and easily distinguishable in most cases. The servant assumes the risks incident to the work by the terms of his contract of employment,

which, like the terms of other contracts, may either be expressed or arise by necessary implication from such as are expressly stated. The minds of both parties must meet, however, upon the terms of the employment. Thus, when a railway company employs persons to operate its trains, the employment implies that it will use ordinary care to furnish them a reasonably safe roadway upon which to perform the duties incident to their employment. If it should build a structure so near to its tracks as to make it unsafe to perform their work about the train in the ordinary way, it would be negligence on the part of the company, and the train man who should be, while in the exercise of due care, injured by such structure would have a just claim for compensation. If, however, the servant knew the danger, and, notwithstanding such knowledge, should place himself in a position to be injured, he might be guilty of such contributory negligence as would prevent a recovery, notwithstanding the negligence of his master.

The company could, however, and in many cases it might be necessary that it should, operate its railroad notwithstanding the dangerous obstruction, and it could lawfully employ men for that purpose, informing them of the dangerous condition. If under the circumstances they should accept the employment they would thereby assume the risk arising therefrom. So in a case like the present, where the railroad company has been guilty of negligence in the movement of its train, by failure to give the signal to which another is entitled for his protection, if that other, seeing the train in motion, goes in front of it and is injured, his knowledge of the situation has made the giving of the signal unnecessary, and his own contributory negligence is the real cause of the injury. It follows, then, that the real question is whether or not the deceased was guilty of such negligence, contributory to the fatal injury, as should defeat a recovery in this case.

II.  We have already referred to the fact, shown by the evidence, that the shanty to which the deceased was going at the time of the injury, was installed to be used by him for the very purpose for which he was then approaching it.    In the cross-examination of witnesses, the defendant's attorney gave prominence to the fact that it was on the opposite side of the fatal track from his work; so that it was necessary, and therefore contemplated by the defendant, that he should cross this same track forward and backward every time he used the facility so provided.

The expression of this court in the opinion by WOODSON, J., in Meily v. Railroad, 215 Mo. 567, 586, is peculiarly applicable to that feature of this case. ·He said: "In the case at bar  .  .  . the uncontradicted evidence shows that the floor of the skid was placed therein with cleats nailed thereon for the express purpose of having the employees use it in loading the wheels upon the cars, just in the precise manner in which respondent was using it when the injury was received.   That being true, it comes of poor grace for appellant to say to respondent in one breath, 'Yes, I constructed the floor for you to walk upon in the discharge of your duties,' and in the next to say to him, 'You are guilty of contributory negligence in walking upon the floor so constructed for you, and which was being used by me at the very time of your injury.' "

It is the settled doctrine of this court that "the presumption of due care always obtains in favor of plaintiff in an action to recover damages for an injury sustained by him through the alleged negligence of another." [Buesching v. St. Louis Gaslight Company, 73 Mo. 219, 233; Petty v. Railroad, 88 Mo. 306, 320.] Contributory negligence, in this State, is a matter of defense, and the plaintiff need not allege or prove that he was without fault at the time of the injury. [Meily v. Railroad, supra, and cases cited.]   When-

ever this defense is made he is entitled to have it submitted to the jury, unless, by his own admission, or by other evidence upon which he depends to fix the liability of the defendant, it is conclusively shown that facts exist that are inconsistent with the presumption of due care.

In this case an opening had been made at the place most convenient for the use of the deceased and had been there at least during the entire day immediately preceding the accident. Carpenters had been at work in this opening repairing one of the cars, which was still without a drawbar, so that no coupling could be made from either end of the string at that point. The implied invitation to cross the track having been extended by the maintenance of the shanty at that point, it was the duty of the defendant to protect those who should accept it, by conformity to such rules as were reasonable and appropriate for that purpose, and the deceased had the right to expect that measure of protection.

As was said in Newson v. Railroad, 29 N. Y. 390, and repeated with approval by this court in Weigman v. Railroad, 223 Mo. 699, 720, and Donohue v. Railroad, 91 Mo. 357, 364, "The law will never hold it imprudent in any one to act upon the presumption that another in his conduct will act in accordance with the rights and duties of both." The situation was not like the crossing of the ordinary highway to which trains approach from a distance, so that the traveler may look up and down before crossing the track to ascertain whether there is a train within the danger zone. The opening was small—from three to six feet—so that when the string of cars should be struck by a moving engine its closing would be almost instantaneous. The person using it would have to depend upon the signal announcing the movement, and this signal was amply provided for in the rules of the company. One might approach the crossing and see an engine

standing attached to the very string of cars which had been broken to make the opening through which he must pass, and wait for hours before any movement would take place and then start to cross at the instant the engine would move. Should it move away, he would be safe. Should it move backward he would be crushed. In such a situation the failure to give a signal announcing the movement could only result from a state of mind that ought not to be encouraged in those having charge of such dangerous force in a large and actively operated train yard.

The deceased approached the convex side. A string of eighteen or twenty cars was cut in the middle so as to make this opening. While the evidence is not clear and full upon that point it does show that he and his companion were approaching diagonally the tangent of the curve at that place, with lighted torches which would have no tendency to extend their view beyond their immediate vicinity. The engineer said that he saw them from the side and rear of his cab until they had got within thirty feet of the opening. The survivor testified that they could not see the engine, which was headed away from them, and that the cars were standing still when they reached them.

The presumption is that the deceased was in the exercise of all necessary caution and looked about him to hear and see whatever was to be heard and seen for his protection, although the locomotive which constituted the danger of the situation could not be seen, and there is no evidence that a sound could be heard. Under these circumstances, to stop would have been equivalent to a wager that the cars before him would be more liable to move at the instant of his approach than at the instant when he should resume his advance.

While the engineer testifies, honestly we are sure, that the switchman giving his signals was on the side

of the track from which the deceased approached, all the other evidence is to the effect that he was on the other side, and this being the inside of the curvature was most probably true. He is presumed to have looked and listened to the extent required by common prudence. The evidence fails to show that, having done so, he saw or heard anything to warn him of danger. The thing which, as we have seen, he had the right to expect, was not to be heard, and the evidence is far from conclusive that any indication of danger was to be seen. We think that the plaintiff was clearly entitled to have the question of contributory negligence of the deceased submitted to the jury under proper instruction from the court.

III. The plaintiff insists that the court erred in instructing the jury (1) "that Thomas Allen, by engaging in the employment in the yards of defendant, in Poplar Bluff, assumed and took upon himself all the risks incident to such employment, among which were the risks of being struck by the cars while attempting to pass upon and over the tracks of the defendant;" and, (2) "if you find that there were any *obstructions* which prevented him from seeing whether they were moving, then it was his duty to *stop* and listen before attempting to pass between the cars; and if you find that by waiting or exercising care on his part, he could have ascertained that the cars were about to be moved and that he failed to exercise such caution and his death resulted in consequence of his being struck by the cars; then your verdict must be for the defendant."

Perhaps the kindest thing that can be said of these instructions is that some constructions that might be placed upon them would be less objectionable than others. The first one which we have quoted above is erroneous because, when freed from the impedimenta to its fair construction, it tells the jury that the

deceased, by engaging in the employment in defendant's yard, took upon himself "the risks of being struck by the cars while attempting to pass upon and over the tracks of defendant," and that these risks of being struck by the cars are, whether induced by the defendant's negligence or not, "among" the risks incident to his employment. The deceased having been killed by "being struck by the cars while attempting to pass upon and over the track" in the line of his employment, it amounts to a direction to find for the defendant.

The second instruction quoted is erroneous in its unqualified direction to the jury that if there were any obstructions which prevented the deceased from seeing whether the cars were moving it was his duty to stop and listen. This clause is objectionable, (1) because there is no evidence upon which to found it, there being nothing in the record tending to show that there was any obstruction between the deceased and the car that moved against him; and (2) because it assumes that by stopping he would have been in a better position to hear, or would have heard, some sound of the nature of which the record is silent.

It is also erroneous in its direction that if the deceased by waiting could have ascertained that the cars were about to be moved, and he failed to do so, the verdict must be for the defendant. It is true that if at that time he had waited a mere instant he would have been too late to have received the injury, and would have ascertained that the cars *had* been moved. The chances, however, were equally good that the moment of waiting would be the fatal one. This instruction is equivalent to a direction to find for the defendant because the deceased did not wait. All these instructions seem framed upon the theory that the jury should be impressed that, had the deceased waited

242 Sup.—13

a moment, the act that caused his death would have been innocuously performed, and that his real negligence consisted in his having chosen that particular time to go to his luncheon. We have no doubt that these instructions, in the respects mentioned, are samples of the unexpected results which sometimes flow from the most ingenuous efforts, but this does not make the result less harmful to the plaintiffs.

For the errors stated the judgment of the circuit court is reversed and the cause remanded for a new trial in accordance with the views here expressed. *Bond, C.,* concurs.

PER CURIAM.—The foregoing opinion of BROWN, C., as to the result reached is adopted by the court. *Valliant, J.,* concurs in the whole opinion; *Graves, P. J., Lamm* and *Woodson, JJ.,* concur in separate opinion by *Graves, P. J.*

GRAVES, P. J.—In this case I only concur in the result reached by our learned Commissioner. I do not agree to what he says about the "presumption of due care." This is a presumption indulged by the law *ex necessitate.* When the man is dead and there is no evidence as to his conduct at the time of the accident, the law through the very necessity of the case indulges the presumption of due care. Presumptions of this character are presumptions of fact—and the presumption takes flight upon the appearance of the facts themselves. When the facts themselves are in evidence there is no place for a presumption as to those facts. The presumption is only indulged in the absence of evidence as to the fact of due care. In this case the partner of deceased was a witness on behalf of plaintiff and detailed the facts surrounding the accident. Such proof of the facts is the matter to be weighed by the jury, and there should not be added in

the scale a presumption of fact which has been displaced by the proof of the fact. Such I think is the rule of this court. *Lamm* and *Woodson, JJ.,* concur in these views.