W. G. DeWITT, Respondent, v. JOHN H. SYFON,
Appellant.

Springfield Court of Appeals, May 9, 1919.

1. **MALICIOUS PROSECUTION:** Malice and Want of Probable Cause.
   Both malice and want of probable cause are essential to sustain
   action for malicious prosecution.

2. **TRIAL:** Instructions: Ignoring Elements of Cause of Action. An
   instruction, authorizing verdict for plaintiff on finding malice alone,
   and ignoring the element of want of probable cause, is erroneous;
   the rule that an instruction covering plaintiff's case need not
   exclude an affirmative defense, but may leave such defense to be
   covered by defendant's instructions, not applying.

3. **MALICIOUS PROSECUTION:** Want of Probable Cause. Probable
   cause is not an affirmative defense to a suit for malicious prosecu-
   tion, but want of probable cause is a necessary ingredient of plain-
   tiff's case.

4. ——: Burden of Proof. The burden of proving want of probable
   cause is on plaintiff.

5. ——: Want of Probable Cause: Discharge by Justice of Peace:
   Question for Jury. Discharge of plaintiff by justice of the peace
   from the criminal charge makes a prima-facie case of want of
   probable cause, and is generally sufficient evidence to carry the
   question of malice to the jury.

DeWitt v. Syfon.

6. ————: Want of Probable Cause: Discharge by Justice of Peace. Although the discharge by the examining magistrate makes a prima-facie case in a suit for malicious prosecution, yet, when the defendant goes forward and puts in the countervailing evidence tending to show probable cause, this presumption disappears, and the evidence may so-completely overcome the prima-facie case as to warrant a directed verdict for defendant.

7. EVIDENCE: Presumption Where Facts are Disclosed: Want of Probable Cause: Discharge by Justice of Peace. After the facts as to want of probable cause are in evidence and there is any conflict, the jury should determine that question unhampered as to any presumption from plaintiff's having been discharged by the justice of the peace from the criminal charge.

8. TRIAL: Instructions: Presumptions. Where there is conflict in the evidence, as to presumption of want of probable cause arising from discharge of the plaintiff by the justice of the peace from the criminal charge, it is improper to charge that the law draws this presumption, since to be told that the law presumes want of probable cause from such facts is calculated to impress the jury that the discharge is conclusive on want of probable cause and ends further inquiry.

9. CHATTEL MORTGAGES: Disposing of Mortgaged Property. The gist of the offense of mortgagor's selling mortgaged chattels, denounced by Revised Statutes 1909, section 4570, is the intent and purpose to defraud.

10. ————: ————. Although title of purchaser of mortgaged personalty may be good as against mortgagee verbally consenting to the sale, yet, under Revised Statutes 1909, section 4570, making it an offense for mortgagor to sell without the written consent of the mortgagee, the verbal consent of the mortgagee is not a complete defense, although it is a potent factor in determining whether there is a fraudulent intent on the part of the mortgagor.

Appeal from Greene County Circuit Court.—*Hon. Arch A. Johnson*, Judge.

REVERSED AND REMANDED.

*Watson & Page* for appellant.

*Hamlin & Hamlin* and *Collins, Stough & Holladay* for respondent.

STURGIS, P. J.—In this suit for malicious prose-
cution the plaintiff prevailed in the trial court both as
to actual and punitive damages.   Hence this appeal.

The prosecution of plaintiff which is alleged to nave
been malicious and without probable cause was brought
under section 4570, Revised Statutes 1909, making it a
criminal offense for a mortgagor to sell or dispose of
mortgaged property without the written consent of the
mortgagee and without informing the purchaser of the
fact of the mortgage for the purpose of defrauding such
mortgagee.   The plaintiff in this case executed a chattel
mortgage to defendant on a certain jack and a horse
owned by him to secure plaintiff's note payable to de-
fendant.   Thereafter and without paying the note and
without the written consent of the mortgagee the plain-
tiff disposed of the jack in a trade for an incumbered
and not very valuable forty acres of land in Christian
County, Missouri.   Both plaintiff and defendant lived
in Greene County where the mortgaged chattels were
also located and where the mortgage was duly recorded.
The defendant on learning of plaintiff having disposed
of the jack in this manner consulted with his own and
the prosecuting attorney of Greene County resulting
is defendant making an affidavit charging the plaintiff
with the offense of unlawfully disposing of mortgaged
chattels.   The alleged value of such property being such
as to make the offense a felony, the plaintiff was ar-
rested and held for a preliminary examination before
a Justice of the Peace, resulting in his being discharged.
The docket of the Justice of Peace shows that on
hearing the evidence such Justice found that "there is
no probable cause to hold this defendant."   The at-
torney who defended plaintiff on the criminal charge
says that the defense he made was that the jack was of
no value. There is other evidence that such was the real
ground of plaintiff being discharged, since if the value
of the jack was less than fifty dollars the offense was
only a misdemeanor and would release plaintiff from a
charge of felony.   The plaintiff, however, claimed then

as he does now that this defendant gave him verba.
permission to sell or dispose of this mortgaged jack.

On a trial of the present case the plaintiff proved
the fact of his arrest and preliminary trial on the
charge mentioned and that same resulted in his being
discharged. The defendant undertook to show that his
action in having plaintiff arrested and tried on this
charge was without malice, was in good faith and on
probable cause. Much of the evidence was directed to
the question of defendant's having given verbal per-
mission to plaintiff to sell or dispose of this property.
On this point the evidence of plaintiff and defendant
is in direct conflict.

The errors assigned here relate to the giving and
refusing instructions. The first instruction given for
plaintiff required the jury, in order to give plaintiff a
verdict, to find that the criminal prosecution was with
malice and without probable cause. This is correct since
both malice and want of probable cause are essential
to sustain plaintiff's cause of action. [Stubbs v. Mul-
holland, 168 Mo. 47, 74, 67 S. W. 650; Harris v. Railroad,
172 Mo. App. 201, 268, 157 S. W. 893; Pinson v. Camp-
bell, 124 Mo. App. 260, 268, 101 S. W. 621.]

The second instruction given for plaintiff gives a
definition of the two kinds of malice, malice in law and
malice in fact, and ends with this clause: "If, there-
fore, the jury believe from the evidence that the de-
fendant, John H. Syfon, was moved by spite, hatred or
ill-will against the plaintiff, or that the arrest and
prosecution of plaintiff was wrongfully and intention-
ally caused by defendant, then the prosecution was
malicious and your verdict should be for the plaintiff."

This instruction is said to be error because it au-
thorizes a verdict for plaintiff on a finding of malice
alone and ignores the essential element of want of
probable cause. That the instruction is erroneous in
this respect is obvious since it does authorize a verdict
for plaintiff without requiring a finding of want of
probable cause. [State ex rel. Long v. Ellison, 272

Mo. 571, 583, 199 S. W. 194; Wojtylak v. Coal Co., 188 Mo. 260, 282, 87 S. W. 506.] So this court has held in Foster v. Blanchard, 204 S. W. 829.

This case does not, as suggested by plaintiff, fall within the class of cases holding that an instruction covering plaintiff's case need not exclude an affirmative defense raised by defendant but may properly leave such defense to be covered by defendant's instructions. Ellingson v. Railroad, 60 Mo. App. 679, 689 and Kingman v. Shawley, 61 Mo. App. 54 will serve as examples. Want of probable cause is not an affirmative defense to a suit for malicious prosecution, but is a necessary ingredient of plaintiff's case and as to which the burden of proof is on plaintiff.

Plaintiff claims, however, that this error is cured by the other instructions which require a finding of want of probable cause as an essential element of plaintiff's case. The rule is invoked that all the instructions must be read together and when so read if they fairly cover the entire case, there is no reversible error. In view of other points raised in the case this question need not be further discussed since it will suffice to brand this instruction as error and proceed to such other points.

Instruction four given for plaintiff tells the jury that malice may be inferred from the facts showing want of probable cause and:

"If you find from the evidence that the justice of peace before whom the affidavit for a warrant was sworn out, and before whom the charge against plaintiff was tried, discharged the plaintiff upon the trial of that cause, then the law presumes that there was no probable cause for defendant swearing out the warrant against plaintiff and having him arrested."

This instruction, we think, is clearly erroneous. It is true that the discharge of plaintiff by the justice of peace from the criminal charge makes a prima-facie case of want of probable cause and is generally sufficient evidence to carry that question to the jury. It

shifts the burden of evidence on defendant to show the facts causing him to believe in the plaintiff's guilt. As said in Stubbs v. Mulholland, 168 Mo. 47, 77, 67 S. W. 596:

"That probable cause was wholly lacking in this case is shown prima-facie by the discharge of the accused. This alone, would call on defendants for their defense; and with nothing introduced by them in evidence would authorize the matter to be submitted to the jury, under appropriate instructions, to determine whether they would, from the facts showing a want of probable cause, draw an inference of malice, and thus furnish the other ingredient necessary to make up the component parts of an action for malicious prosecution."

In Nolen v. Kaufman, 70 Mo. App. 651, 656, the court held that although the discharge by the examining magistrate makes a prima-facie case in a suit for malicious prosecution, yet when the defendant goes forward and puts in the countervailing evidence tending to show probable cause then this presumption disappears and the evidence may so completely overcome the prima-facie case as to warrant a directed verdict for defendant. After the facts as to want of probable cause are in evidence and there is any conflict the jury should determine that question from the facts in evidence unhampered by any presumption. It was unfair to defendant to throw into the scale against him a presumption of law as to the vital fact in the case. [Brannock v. Jaynes, 197 Mo. App. 150, 168, 193 S. W. 51.] In the eyes of the jury such solemnly announced presumption doubtless outweighed every fact in defendant's favor. As stated in Tetwiler, v. Railroad, 242 Mo. 178, 194, 145 S. W. 780:

"In this case the partner of deceased was a witness on behalf of plaintiff and detailed the facts surrounding the accident. Such proof of the facts is the matter to be weighed by the jury, and there should not be added in the scale a presumption of fact which has been displaced by the proof of the fact." [See, also, Linder-

man v. Carmin, 265 Mo. 62, 74, 164 S. W. 614; State
ex rel. v. Ellison, 268 Mo. 239, 256, 187 S. W. 23; Mock-
owik v. Railroad, 196 Mo. 550, 571, 94 S. W. 256;
Fifth-Third Nat. Bank v. McCrory, 191 Mo. App. 295,
298, 177 S. W. 1058.]

Moreover the language in which this instruction is
couched is also calculated to impress the jury that the
presumption of want of probable cause drawn from the
discharge of the accused by the justice is a conclusive
one for the jury are told that the *law* draws this pre-
sumption. To be told that the *law* presumes want of
probable cause from the fact of the discharge of the
accused by the investigating officer is calculated to im-
press the jury that such discharge is conclusive on
that point and ends further inquiry. [Sowders v. Rail-
road, 127 Mo. App. 119, 124, 104 S. W. 1122.]

The court also instructed the jury that if the de-
fendant, mortgagee, verbally consented at the time the
mortgage was given or thereafter that the plaintiff,
mortgagor, might dispose of the mortgaged property,
then it was no offense for him to sell or dispose of such
mortgaged property. The statute, section 4570, Revised
Statutes 1909, defining the criminal offense says that
every mortgagor of chattels who shall sell or dispose
of same "without the *written* consent of the mortgagee
or beneficiary and without informing the person to
whom the same is sold or conveyed that the property
is mortgaged . . . for the purpose of defrauding
the mortgagee" shall be guilty, etc. Bearing in mind
that the gist of the offense is the intent and purpose
to defraud (Pinson v. Campbell, 124 Mo. App. 260, 270,
101 S. W. 621) it would appear that when such intent is
shown then the offense is complete unless the mortgagor
has the *written* consent of the mortgagee and unless he
informs the purchaser of the mortgage. The seller of
mortgaged property, when done with intent to defraud
is not guiltless where it is shown that he did so without
such written consent or without informing the intended
purchaser of the existing mortgage. We find no case

holding that the statutory requirement as to *written* consent is meaningless and that verbal consent is equally efficient as a complete defense. Of course verbal consent of the mortgage is a potent factor in determining whether there was 'an intent to defraud on the part of the the mortgagor but that is different than declaring as a matter of law that verbal consent of the mortgagor is a complete defense. It has been held and is the established rule in civil cases that a mortgagor consenting either verbally or in writing to a sale or other disposition of property by the mortgagor cannot thereafter defeat the title of such purchaser. This is based on the theory of waiver and estoppel as to such third party. [Coffman v. Walton, 50 Mo. App. 404; Randol v. Buchanan, 61 Mo. App. 445; Rogers v. Davis, 194 Mo. App. 378, 388, 184 S. W. 151.]

But notwithstanding the title of the purchaser may be good as against the mortgagor giving his verbal consent to the sale, yet the mortgagor may be guilty of an offense under the statute. In the Coffman case, supra, the court says:

"That statute stands for the protection of the mortgagee and purchaser by inflicting a punishment for an attempt to defraud them. It does not affect a title which may be conveyed by the mortgagor any more than it would be affected by the mortgage itself without the statute. So, if plaintiff, as mortgagee, verbally authorized the sale of the cattle the title will be freed from the mortgage in the hands of a purchaser, notwithstanding the mortgagor might not, perhaps, have a defense if prosecuted for selling mortgaged chattels without the statutory written consent of the mortgagee."

In Randol v. Buchanan, supra, the court, speaking of an instruction to the effect that title to mortgaged property would not pass to a purchaser on the verbal consent of the mortgagor to make the sale, said:

"The plaintiff's instruction is supposed to be authorized by section 3570 of the Revised Statutes of 1889, which makes it a misdemeanor for a mortgagor to sell

the mortgaged property without the written consent of the mortgagee. This is a misconception of the purpose and scope of the statute. It does not declare such a sale void or prohibit it, but it merely provides that in such a case the mortgagor may be punished. The intention of the Legislature was to protect the mortgagee against the fraudulent acts of the mortgagor in removing and selling the property at distant points, and also to protect innocent third parties who might, under such circumstances, be inclined to purchase it. [Lafayette Bank v. Metcalf, 29 Mo. App. 384.] If the mortgagor sells the chattels before condition broken, the title passes subject to the mortgage, even though he had no authority, either oral or written, to sell. [State to use v. Carroll, 24 Mo. App. 358.] In doing so, however, he would render himself liable to prosecution. But, after condition broken, the title to the property vests in the mortgagee, and the mortgagor's right to redeem becomes a bare equity. He remains in possession as mortgagor, but has no power to affect the title, except by authority of the owner. But we can conceive of no valid reason why he—like any other agent in possession of personal property—may not sell it with the oral consent of the mortgagee and thereby pass the title, although his written consent would seem necessary to prevent a prosecution."

Speaking of this statute Kelley's Criminal Law and Practice (3 Ed.), section 714, p. 640 says: "Notwithstanding that the sale is in violation of the statute and subjects the mortgagor to the penalty, yet the purchaser will take the title subject to right of the mortgagee."

The court, therefore, erred in giving Instruction 9 for plaintiff and in its modification of Instruction D for the defendant. The judgment is, therefore, reversed and the cause remanded. *Bradley* and *Farrington, JJ.*, concur.