CELINA MORRIS, Respondent, v. W. J. BUTLER, Receiver of Bates National Bank, Appellant.

**Kansas City Court of Appeals, November 1, 1909.**

1. **BILLS AND NOTES: Execution and Delivery: Replevin.** A. gave money to B. to be by him loaned on real estate security. B kept the money but executed notes for same payable to A. and also signed by C. These notes were afterwards found among the papers of B. by the receiver of the bank of which B. was President. A. instituted an action in replevin to obtain possession of the notes. *Held*, that as there had been no delivery of the notes A. could not recover in that action.

2. ———: **"To Execute."** In strict legal understanding, the verb "to execute" as applied to deeds, notes, or written instruments, includes signing and delivering, but in popular speech it is often used to express merely the act of signing the instrument.

3. **ADMISSION OF COUNSEL: Intent of Same.** Admissions of counsel are contractual in their nature and binding upon the parties, and their interpretation is controlled by the rule employed in the construction of other contracts. The mutual intention and understanding of the parties, collected from what was said and done at the trial where the admissions were made and acted on is the true touchstone; and if it appears that the parties and the court used the word in its popular and not its strict technical sense, this Court will, on appeal give it that definition.

Appeal from Bates Circuit Court.—*Hon. Argus Cox,* Special Judge.

REVERSED.

*John A. Eaton, E. H. McVey* and *W. O. Jackson* for appellant.

There is no evidence that the receiver of the Bates National Bank ever had the notes in controversy herein in his possession, and the court erred in finding that the receiver was in possession of the notes. Kirk v.

Kane, 87 Mo. App. 274. Delivery and acceptance are essential prerequisites to the validity of a promissory note. Carter v. McClintock, 29 Mo. 464; Welch v. Dameron, 47 Mo. App. 221. Plaintiff must recover in this action altogether upon the strength of her own title. She pleads right to possession by reason of ownership, and she must prove ownership before she is entitled to recover. Westbury v. Millington, 89 Mo. App. 294; Lute v. Bank, 141 Mo. 584.

*Thos. J. Smith* for respondent.

The court below on behalf of the plaintiff instructed under the first declaration of law as follows: "The court declares the law to be that in this case the finding and judgment must be for the plaintiff for the recovery of the notes sued for." No objection was made by the defendant to the giving of this instruction, nor was any such alleged error called to the court's attention in the defendant's motion for new trial. This being true, this court will not undertake to review the judgment of the court below, the action being one at law. Logan v. Enterprise, etc., Co., 47 Mo. App. 513; O'Neil v. Young, 58 Mo. App. 631; See v. Insurance Co., 60 Mo. App. 522; Boulton v. Columbia, 71 Mo. App. 524; Profit v. Railroad, 91 Mo. App. 369. This rule obtains as fully where the action has been tried by the court as if tried by jury. Hill v. Kingsland, 131 Mo. 648; Zimmerman v. Railroad, 156 Mo. 565-6, and authorities cited. The appellant, after the rendition of the judgment in this case, which, among other things, vested title to the notes in question in appellant, having filed and made proof of the same in his favor before the referee in bankruptcy of the estate of F. J. Tygard, bankrupt, thereby accepted and recognized as valid and binding the judgment in this case, which being an entirety, appellant cannot now be heard to question. Waddingham v. Waddingham, 27 Mo. App. 608; McClannahan v. West, 100 Mo. 323; Aull v. Transit Co., 149 Mo. 15;

Dulaney v. Buffum, 173 Mo. 13. Although the notes in question were not in fact manually delivered to the plaintiff in this case prior to the time of the institution of the suit, the record shows that they were executed for actual money received, and demand made of the maker (Tygard) for the possession of the notes, which facts constitute a ratification by the plaintiff of the fact of the taking of the notes and of a constructive delivery of the same to her. It is well settled that a subsequent ratification is equivalent to a prior authorization in matters of this character.

JOHNSON, J.—At the March term this court, speaking through BROADDUS, P. J., announced the following opinion, reversing the judgment pronounced by the trial court in the case under consideration:

"The plaintiff sues the defendant as receiver in bankruptcy of the Bates County National Bank in replevin for the possession of two promissory notes made payable to her and purporting to have been executed by F. J. Tygard and one note payable to her and purporting to have been executed by the said Tygard and J. C. Clark.

The facts are that Tygard was the president and Clark was the cashier of said bank at and prior to the dates of said notes. The plaintiff placed in the hands of Tygard a certain sum of money with the understanding that he was to lend it for her on real estate security. Tygard, instead of lending the money, made some other disposition of it and wrote the notes, two of which were signed by himself and one by himself and Clark, but kept by himself with his private papers in the bank. Tygard was also declared a bankrupt and said notes were taken possession of by the receiver in these proceedings.

Plaintiff testified that she had no knowledge of the existence of the notes until after the bank and Tygard ceased to do business.

Morris v. Butler.

A jury was waived and the cause tried before the court. The finding was that the plaintiff was entitled to the possession of the so-called notes and, as she elected to take the value of the property, judgment was rendered for her for the face value of the notes less credits indorsed thereon. The defendant appealed. The plaintiff moves to dismiss the appeal on two grounds, only one of which we deem of sufficient importance to discuss.

One of the grounds in respondent's motion to dismiss appeal is based upon the fact that since the appeal in this case he has appeared before the Hon. T. T. Crittenden, referee in bankruptcy, and made the following claim, to-wit: That F. J. Tygard against whom a petition for bankruptcy has been filed is indebted to him as receiver of said bank in the sum of $34,204.25, the consideration for which is as follows: Then follows a long statement of items in which are included the three notes mentioned, viz.: 'One certain promissory note dated August 11, 1903, for thirty-five hundred dollars payable to Mrs. J. W. Morris, with interest . . . liability for which has been adjudicated against the Bates National Bank and on which there is a balance due in the sum of eleven hundred, fifty-five and 98-100 dollars.' A similar statement is made of the other two notes.

The defendant in response to said motion says: "Appellant further states that the filing of the claim in bankruptcy was for the purpose of preserving the estate of the receivership in the event of the happening of a contingency, i. e., liability under the controversy herein; that if said claim is for no other or further purpose than it is for the benefit of respondent, Celina Morris, as well as for the benefit of the appellant, in that each have a contingent interest. Appellant further states that the issue raised by the filing of the claim in bankruptcy is an issue of fact which this court will not pass upon.

Appellant for further resistance states that no benefits have been received; that said claim has merely been filed and action thereon awaits the result of this appeal and that the said claim will remain *in statu quo* until the final determination of the appeal; that there has been no settlement of the controversy, or of the merits of the case, or no satisfaction of the judgment and no acquiescence therein."

Under the facts, as a matter of law, plaintiff was not entitled to recover as against the receiver. We will not attempt to review the authorities of the defendant to sustain his position that the plaintiff failed to make out a case. It is sufficient to say that the so-called notes were not contracts for the payment of money as they had never been delivered. There was no agreement that Tygard and Clark would execute the papers, or that plaintiff had accepted them after they were made.

And the claim of ownership of the papers made by the defendant as receiver of the bank ought not to preclude him from a hearing on this appeal. The judgment in this case does not determine that the notes in question are a part of the estate of the bank. It determines, on the contrary, that they are the property of this plaintiff which defendant wrongfully detains as such receiver. If the claim of defendant is to be construed according to the language used, his claim cannot have any reference to the adjudication in this case as there was no such adjudication. And an exhibit of the judgment and proceedings in this case would not support his claim before the referee. And no proof that he could make aliunde of the record would support any such claim. Therefore, we hold there is no such claim in fact before the referee that would amount to an abandonment of this appeal or a recognition of its conclusiveness upon the defendant. The judgment herein has no basis whatever for its support and it would

be a great injustice to let it stand against defendant and the creditors of the bank whom he represents."

A motion for rehearing filed by plaintiff was sustained and the cause was resubmitted at the present term. A thorough reconsideration of the briefs and arguments of counsel has resulted in the conviction that we properly dealt with the case in our former opinion and we readopt that opinion as a correct expression of our views of the questions discussed. The learned counsel of plaintiff press on our attention other questions, not referred to in the opinion, with so much earnestness and evident sincerity that we deem it but due counsel to specially determine these questions in a supplemental opinion.

First, it is contended that the fact on which our decision turned that there had been no delivery of the notes to plaintiff by Tygard was withdrawn from the issues in the case by the following admission of counsel for defendant made of record at the beginning of the trial.

"Counsel for plaintiff: You admit these notes to have been executed by the parties they purport to be executed by?

"Counsel for defendant: "Yes, sir; these are the notes described in the petition."

"Counsel for plaintiff: These are the genuine notes?

"Counsel for defendant: In our opinion."

It is argued the admission that the notes were executed necesarily implied that they were delivered to plaintiff the payee as well as signed by the makers.

In strict legal understanding, the verb "to execute" as applied to deeds, notes, or written contracts, includes signing and delivering, but in popular speech it is often used to express merely the act of signing the instrument. [Rapalje & Lawrence Law Dictionary; Anderson's Dictionary of Law; Webster's International

Dictionary; 3 Words and Phrases Judicially Defined, 2558.]

The admission that the notes offered were those executed by the parties was contractual in its nature and became binding on the parties. [Hannah v. Baylor, 27 Mo. App. 312.] It belonged to the class of admissions which falls under the head of conclusive presumptions of law and its recitals to the extent of their legitimate scope must be presumed to be true. [Moling v. Barnard, 65 Mo. App. 603.] "There is never need to prove that which your adversary concedes." [Bank v. Bank, 90 Mo. App. 399.]

But the interpretation of such admissions should be controlled by the dominant rule employed in the construction of other contracts. The mutual intention and understanding of the parties to be collected from what was said and done at the trial where the admission was made and acted on is the true touchstone. We, therefore, turn to the record to ascertain whether the parties and the trial court understood defendant's counsel to use the word in its strict technical sense or in the popular sense. If he intended to admit that the notes had been delivered to plaintiff before the failure of the bank, he admitted away the only fact on which he could predicate a defense to the merits of plaintiff's demand. His conduct throughout the trial demonstrates that he was alive to the importance of the fact and did not intend to abandon it, but did intend to use it as his chief defense. In his cross-examination of plaintiff and in the direct examination of Tygard, he carefully elicited the fact, without objection by plaintiff, that there had been no delivery of the notes. The issue of delivery or no delivery was contested, preserved and relied on by defendant, and that plaintiff recognized it as a live issue appears not only in the proceedings at the trial but in her first brief filed in this court. We quote from the brief as follows: "Although the notes in question were not,

in fact, manually delivered to the plaintiff in this case prior to the time of the institution of the suit, the record shows that they were executed for actual money received, and demand made of the maker (Tygard) for the possession of the notes, which facts constitute a ratification by the plaintiff of the fact of the taking of the notes and of a constructive delivery of the same to her. It is well settled that a subsequent ratification is equivalent to a prior authorization in matters of this character."

Since it is apparent that the parties and the court used the word in its popular sense, we will give it that definition and accordingly hold that the admission included only the fact of the signing of the notes.

The next point made by plaintiff is that there was a constructive delivery of the Tygard and Clark note to plaintiff. It is argued that when Clark signed that note and handed it to Tygard, he thereby delivered it to the agent of plaintiff authorized to receive a delivery.

The scope of the agency of Tygard was to lend plaintiff's money on real estate security. Instead of doing this, he lent the amount of the note in question to a partnership composed of himself and Clark which was the same thing as lending it to himself. The transaction was beyond the apparent as well as the actual scope of his employment and the supposititious delivery by Clark was no delivery to plaintiff for the simple reason that Tygard had no authority to accept a note of that character.

Further, it is argued that there was a constructive delivery of all the notes because shortly after the bank failed plaintiff ratified the acts of Tygard in lending her money to himself and asked him to give her the notes. We quote the testimony of plaintiff on which this proposition is founded:

"Q. I believe you said you never had had the notes in your posession at all?  A. I never did.

"Q. You never authorized the taking of them? A. What?

"Q. You never authorized Captain Tygard to give these notes of his in his name? A. No. I didn't know he had any; I didn't know he had the money even; I supposed it was out in real estate, and they were other people's notes.

"By the Court: Q. Well, how did Captain Tygard come to take these notes? Did he have the money for the purpose of loaning it? A. When I came in possession of this money, I turned it over to Captain Tygard to loan for me on some real estate security, and I didn't know where the notes were, nor who held the notes; I was away in Chicago most of the time until I returned, and when the bank closed I spoke to Captain about the notes, and he said they were among his private papers in the bank, and I said, well, I want possession of the notes, and would go to the receiver and just get them, and Captain informed me I could not get possession of them, because the receiver was in possession, and he couldn't get his private papers, and consequently I couldn't get mine, and then when the overdraft came, of course I was wonderfully surprised, because I knew I had no account in the bank—

"By Mr. Smith: You needn't state about that because the court held that was immaterial.

"By the Court: Well, your understanding of the way these notes came to be given, was from the fact that Captain Tygard had your money for the purposes of loaning it? A. Yes, sir; to be loaned on real estate."

This testimony does not bear out the contention of plaintiff's counsel that there was a ratification. It is evident plaintiff still thought at the time of her interview with Tygard that he had lent her money to other parties on real estate security and she asked him to turn over to her such notes—not notes that he had

executed himself for the money he had appropriated to his own use.

We have considered the point that the record made by defendant in the trial court is not sufficient to preserve the issues we have determined, and find it to be without merit. The judgment embraces findings of fact and we think the motions for a new trial and in arrest bring the case before us for review.

The judgment is reversed.

All concur.