## W. K. CHANDLER, Administrator, Respondent, v. JASON P. HEDRICK, Appellant.

**St. Louis Court of Appeals, February 2, 1915.**

1. **EXECUTORS AND ADMINISTRATORS: Discovery of Assets: Instructions: Conformity to Evidence.** In a proceeding by an administrator to discover assets, under Secs. 70 to 73, R. S. 1909, inclusive, defendant, who was charged with wrongfully withholding the assets of his father's estate from the administrator, admitted, in his answer to the interrogatories filed, that his father had indorsed and delivered to him a cashier's check in payment of services rendered and to be rendered. The court charged, at the instance of plaintiff, that defendant admitted he had received a check from his father, for which he had not accounted to the administrator, and that he was guilty of wrongfully withholding said money from the estate, unless his father gave him the money or check before his death, and that, to find a gift, it must be found that the father intended title and possession to pass at once. *Held,* that the instruction was not authorized by the evidence, since defendant did not claim the check as a gift from decedent, but as compensation for services; Tygard v. Falor, 163 Mo. 264 being distinguished on the ground that, in that case the son retained money under a claim of gift from the father, while here the son did not retain money, but a negotiable instrument payable to the father and indorsed by him, and did not claim the instrument as a gift, but as compensation.

2. **WITNESSES: Competency of Survivor.** One accused of withholding assets from an administrator, in a proceeding under Secs. 70 to 73, R. S. 1909, inclusive, while incompetent to testify to transactions with deceased, under Sec. 6354, R. S. 1909, may testify to transactions occurring after the granting of letters of administration.

3. **BILLS AND NOTES: Possession: Presumption of Proper Transfer.** Both at common law and under Sec. 10029, R. S. 1909, possession of a negotiable instrument, indorsed by the

payee, raises a prima-facie presumption of proper transfer to the holder.

4. ————: ————: ————: **Delivery.** Actual or constructive delivery of an indorsed promissory note payable to order is essential to vest title; but delivery must be presumed prima facie, from possession of a properly indorsed note, which presumption will prevail, in the absence of rebutting evidence.

5. **EVIDENCE: Presumption of Correct Action.** One is presumed innocent of wrong-doing until some evidence to the contrary, of probative force and value, is adduced.

6. **EXECUTORS AND ADMINISTRATORS: Discovery of Assets: Sufficiency of Evidence.** In a proceeding by an administrator to discover assets, under Secs. 70 to 73, R. S. 1909, inclusive, defendant, who was charged with wrongfully withholding the assets of his father's estate from the administrator, admitted, in his answer to the interrogatories filed, that his father had indorsed and delivered to him a cashier's check in payment of services rendered and to be rendered. There was no evidence that the check, which had been duly indorsed by decedent, was in his possession at the time of his death. *Held*, that defendant's possession of the duly indorsed check raised a prima-facie presumption that it had been properly transferred to him, and there being no evidence to rebut the presumption, a judgment in favor of the administrator cannot stand.

Appeal from Bollinger Circuit Court.—*Hon. Peter H. Huck,* Judge.

REVERSED AND REMANDED *(with directions).*

*J. W. Caldwell* and *Wm. M. Morgan,* for appellant.

(1) The court should have permitted the defendant to testify that payment of funeral expenses to McLain & Kinder was after the appointment of the administrator. Kirton v. Bull, 168 Mo. 622. (2) Appellant's instruction in the nature of a demurrer to the evidence asked at the close of plaintiff's evidence and rendered at the close of all the evidence should have been given. Ryan v. McCully, 123 Mo. 636; Fink v. Railroad, 161 Mo. App. 316; Warner v. Railroad, 178 Mo. 326; Trig v. Ozark Land & L. Co., 187 Mo. 227.

(3) Instruction numbered one given for respondent should not have been given. It singles out one fact in the evidence, is a commentary on the evidence, indicates the opinion of the judge, is not a correct statement of the defendant's admission in the pleading and evidence and submits the case on an issue not raised by the pleadings nor by the evidence. Cole v. Waters, 147 S. W. 552; Webb v. Baldwin, 147 S. W. 849. (4) Instruction numbered three given for respondent should not have been given because there is no evidence on which to base it and is a commentary on the evidence, and is misleading. (5) Instruction number 3 given for respondent singles out one fact and gives it undue prominence and is misleading to the jury. Webb v. Baldwin, 147 S. W. 849. (6) Instruction numbered three asked by appellant, is a correct statement of the law as applied to the facts, and should have been given, and the court erred in refusing to give it and giving it as so amended. Miller v. Barnett, 124 Mo. App. 53.

*W. K. Chandler* for respondent.

(1) The proceeding in this case were begun and carried on under the provisions of sections 70, 71, 72 and 73 at pages 175 and 176 of the Revised Statutes of 1909, of the State of Missouri. The court committed no error in refusing to allow the defendant to testify that payment of funeral expenses to McClain & Kinder was after the appointment of the administrator for the reason that said testimony was irrelevant and incompetent, and not tending to prove any fact at issue in the cause. The place to present this claim or demand for proof and allowance was in the probate court of Bollinger county, Missouri. The administrator was entitled to the possession of all the money and other personal property after the date that he was qualified as the administrator of the estate of Anderson Hedrick, deceased. Houston v. Moore, 18

Mo. App. 406. (2) Appellant's instruction in the nature of a demurrer to the evidence asked at the close of plaintiff's evidence and rendered at the close of the evidence should not have been given and the court committed no error in refusing the same. The cases cited by appellant in support of said demurrer to the evidence are not in point. (3) The court committed no error in giving instruction number one for respondent. It clearly covers the points at issue in the cause. (4) The instruction numbered three given by the court for respondent was clearly within the law. It is not a commentary on the evidence nor is it misleading, and is fully supported by the evidence. Tygord v. Falor, 163 Mo. 234. (5) Instruction numbered three does not single out one fact and give it undue prominence, nor is it misleading to the jury. (6) The court committed no error in refusing to give instruction numbered three, asked by appellant. It was not supported by the evidence, or the law in the case, and the case of Miller v. Barnett, 124 Mo. App. 53, cited by appellant in his brief, is not in point.

ALLEN, J.—This is a proceeding to discover assets, under sections 70 to 73 inclusive, Revised Statutes 1909, prosecuted by the administrator of the estate of one Anderson Hedrick, deceased, against the defendant, Jason Hedrick, a son of said deceased. The cause originated in the probate court by the filing of an affidavit on August 11, 1911, by plaintiff administrator, in accordance with the provisions of section 70, Revised Statutes 1909. Citation was duly issued to defendant, and thereafter the administrator filed interrogatories, to which answers were duly filed by defendant. Thereafter a trial of the issues in the probate court resulted in a verdict and judgment against defendant, from which he appealed to the circuit court, where, upon a trial *de novo* before the court and a jury, there was again a verdict and judgment against him (the verdict

being concurred in by ten jurors), from which he prosecutes this appeal.

It appears that the deceased, Anderson Hedrick, had been a resident of Bollinger county, Missouri, for many years, where he at one time owned a small farm and some little personal property, all of which he sold during his lifetime. What remained of the proceeds thereof is the bone of this contention. He left surviving him six children, all adults; none of whom, except defendant, then resided in Bollinger county. The evidence is that deceased and defendant lived together during nearly all of the latter's life; that defendant married perhaps six or seven years prior to his father's death, and that from and after his mariage his father lived with and was supported by him in his home, during at least the greater portion of such period.

Early in 1910 the deceased, accompanied by defendant, went to visit another son, George W. Hedrick, living in Oklahoma, where he remained until October of that year, returning to defendant's home in Bollinger county. While in Oklahoma he purchased a bank draft from the Farmers State Bank of Ada, Oklahoma, of date October 24, 1910, payable to his order, for $600, drawn upon the National Bank of Denison, Texas. He died at defendant's home in Bollinger county on November 29, 1910. And the evidence shows that on December 2, 1910, the above-mentioned draft was deposited by defendant in a bank at Zalna, Missouri, indorsed by deceased and defendant.

In answer to interrogatories filed, defendant stated that the deceased had deposited in the Oklahoma bank $600 for which he received a "cashier's check." In answer to an interrogatory requiring him to state, if he knew, what the deceased did with the "certificate of deposit or cashier's check or draft, if he had one," defendant stated as follows: "He gave it to me for services I had rendered him, and for services to be rendered in taking care of him in the future."

A witness for defendant testified that he was present at the home of defendant's father-in-law when deceased stopped there with defendant on his return from Oklahoma and before reaching defendant's home, and that the witness saw deceased give defendant his pocketbook. And another witness, a neighbor, testified that he visited deceased on the evening before the latter's death, and that in conversation with the witness the deceased said that "he aimed for Jason Hedrick to have what he had, for he had done more for him than any of the rest; that is, any of the folks, his children." There was also evidence of the payment by defendant of a doctor's bill for deceased; and defendant offered to show that he paid the funeral bill.

It is evident that the case was tried below upon an erroneous theory, because of the failure to properly reckon with the fact that the draft which came into defendant's possession was a negotiable instrument, indorsed by the deceased. The instructions given on behalf of plaintiff administrator in the main follow very closely those approved in Tygard v. Falor, 163 Mo. 234, 63 S. W. 672. The court instructed that it was admitted by Jason Hedrick, in answer to interrogatories filed, that he received from his father a check or draft for $600, shortly before the latter's death, which he had not accounted for to the administrator; and that the jury should find him guilty of wrongfully withholding "said money" from the estate, unless it was found that Anderson Hedrick in his lifetime "gave" the said money or the check to defendant; and that before the jury could find that "such alleged gift" was made they must find that "in making said gift" it was the intention of Anderson Hedrick to at once pass the title and possession, etc.

While an instruction of this character was approved in the Tygard case, supra, the facts there were that a son had sold certain cattle belonging to his father, retaining the proceeds, and claimed that the

father had made a gift thereof to him. Here Jason Hedrick asserts that the draft in question was delivered to him for services rendered and to be rendered to his father. He does not claim the same as a gift at all, but as compensation for services. And it was not money belonging to his father which came into his possession, as in the Tygard case, but a negotiable instrument payable to the father and indorsed by him. The facts of the case were not such as to warrant the giving of this instruction.

It is also clear that defendant, though otherwise disqualified, was a competent witness to transactions occurring after the granting of letters on the estate; and that the court should not have held that he was incompetent for all purposes. [See Weiermueller v. Scullin, 203 Mo. 466, 101 S. W. 1088; Kersey v. O'Day, 173 Mo. 560, 73 S. W. 481; Cobb v. Halloway, 129 Mo. App. 212, 108 S. W. 109.]

These and other questions raised, however, need not be here reckoned with, as we view the case; for an analysis of the evidence adduced has led us to the conclusion that under the special circumstances of this case the court should have peremptorily directed a verdict for the appellant.

The nature and character of the proceeding, under our statute, and the state of the law relative thereto, will appear by reference to some of the more recent cases treating of the subject, viz: Tygard v. Falor, supra; Clinton v. Clinton, 223 Mo. 371, 123 S. W. 1; In Re Estate of Huffmann, 132 Mo. App. 44, 111 S. W. 848; Lemp Brewing Co. v. Steckman, 180 Mo. App. 320, 168 S. W. 226.

It is true that in Tygard v. Falor, supra, it was held that the defendant having, by his answers to interrogatories, admitted that the money there in question came into his hands as his father's agent during the latter's lifetime, made out against himself a prima-facie case, casting the burden upon him to establish

the alleged gift thereof to him by his father. And it is true that in the instant case the defendant stated that he came into possession of the draft during his father's lifetime; but the subject-matter of the transaction, and the facts and circumstances attending the same, are wholly different from those appearing in the Tygard case. Here the defendant came into the possession of a negotiable instrument, to-wit, a bill of exchange, payable to his father and indorsed by the latter. Defendant, of course, was unable to testify as to the attendant facts; and there was no positive proof that the instrument was delivered to him during his father's lifetime. The facts are that the deceased obtained the draft in Oklahoma on October 24, 1910. He died at defendant's home November 29, 1910, and defendant cashed the draft December 2, 1910. In the last analysis, this is all that plaintiff's evidence shows touching the crucial question in the case, and it is in effect nothing more than is admitted by defendant in his answer to the interrogatories.

Two interested witnesses, a brother and a sister of defendant, undertook to testify that deceased had possession of the instrument at the time of his death; but it developed that they in fact knew nothing whatsoever about it. The brother was in Oklahoma and had not seen the draft since his father left there, and the sister, who was not present when the father died, had never seen the draft at all. There was therefore no evidence that the instrument was in the possession of the deceased at the time of his death, nor anything from which this could be inferred, and the inferences to be drawn from the evidence in defendant's behalf tend at least to support the presumption which we think must, prima-facie, be indulged in defendant's favor, that there was a delivery to him during his father's lifetime. The court in submitting the case instructed the jury that "the indorsement and possession of the check or draft in evidence is prima-facie evidence of owner-

ship for value, and the holder is presumed to be the owner thereof.'' This we think is correct; and we are unable to see that there is any evidence in the case having any tendency to rebut the presumption which the court declared must be thus indulged.

Under both the Negotiable Instruments Law, and the law as it existed in this State prior to the adoption of such act, the possession of such an instrument, indorsed by the payee, without more, raises a prima-facie presumption of the proper transfer to the holder. [See Sec. 10029, Rev. Stat. 1909; Lipscomb v. Talbott, 243 Mo. 1, 147 S. W. 798; Hartwell v. Parks, 240 Mo. 537 l. c. 547, 144 S. W. 793; Fitzgerald v. Barker, 85 Mo. l. c. 21; Brown v. Worthington, 162 Mo. App. 520, 142 S. W. 1082; Lowrey v. Danforth, 95 Mo. App. 441, 69 S. W. 9; 8 Cyc. 227, et seq.]

It is true that delivery, actual or constructive, to the defendant during the lifetime of his father, the indorser, was essential to vest title in defendant, the indorsee. And had it appeared that the intrument, whether indorsed or otherwise, was found among the papers or effects of the deceased, defendant would have no title thereto. [See Sec. 10001, Rev. Stat. 1909; Sublette v. Brewington, 139 Mo. App. 410, 122 S. W. 1150; Burchett v. Fink, 139 Mo. App. 381, 123 S. W. 74; Morris v. Butler, 138 Mo. App. 378, 122 S. W. 377; Lowrey v. Danforth, supra.]

But delivery must be presumed prima-facie, from the possession of the indorsed instrument. [See authorities supra; also 8 Cyc. 219.] And such presumption must be allowed to prevail in the absence of anything tending to rebut it. Here, there is nothing which can have any tendency to overthrow such presumption, unless it be the mere fact that the defendant cashed the draft shortly after his father's death. And under the circumstances it does not appear that from this alone it could be inferred that the instrument, though indorsed, was not delivered during the

lifetime of the indorser, and justify a finding that defendant wrongfully withheld and concealed the property from the administrator. There is no charge that the indorsement is not genuine; and the evidence tends with no inconsiderable force to show that the deceased, who appears to have retained full possession of his mental faculties, planned to give all that he had to defendant, which consisted of the instrument in question, by way of compensation to defendant for supporting and caring for him in his declining years.

We are of the opinion that under the evidence adduced the defendant cannot lawfully be convicted of withholding and concealing assets of the estate. Not only is the aforesaid presumption derived from defendant's possession of the indorsed paper a matter of vital consequence in the case, but it must also be borne in mind that one is presumed innocent of wrong-doing until some evidence is adduced, of probative force and value, to be contrary; and upon the facts of this record we think that the verdict, finding defendant guilty of the serious charge laid against him, has no such evidence to support it, but rests upon mere conjecture and speculation.

The judgment will therefore be reversed, and the cause remanded with directions to the circuit court to enter judgment for defendant, and to duly certify the same to the probate court. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.