## W. M. BRANNOCK, Respondent, v. A. C. JAYNES et al., Appellants.

**St. Louis Court of Appeals. Argued and Submitted February 8, 1917. Opinion Filed March 6, 1917.**

1. **BILL OF EXCEPTIONS:** Appellate Practice: Rulings Prior to Trial: Necessity of Term Bill. The action of the trial court in reopening a cause for the taking of further testimony, at a term subsequent to the term at which it was submitted, is not reviewable, on appeal, unless the objecting party saved an exception thereto by a term bill of exceptions.

2. **TRIAL PRACTICE:** Reopening Cause: Waiver of Error. Where, after the submission of a cause, and at subsequent term, it was reopened for the taking of further testimony, and was then continued to the following term, defendant, by participating in the trial at such term, without then objecting, and introducing evidence, waived any error there may have been in reopening the cause.

3. **MORTGAGES AND DEEDS OF TRUST:** Foreclosure: Nature of Action. A proceeding to foreclose a deed of trust, under sections 2828, 2829 and 2834, R. S. 1909, is one at law, although these provisions have not divested courts of equity of their jurisdiction to foreclose mortgages and deeds of trust in the nature of mortgages.

4. **APPELLATE PRACTICE:** Conclusiveness of Findings. In an action at law, findings of the trial court sitting as a jury are conclusive, on appeal, if supported by substantial evidence, unless it appears that the law was misapprehended or misapplied.

5. **MORTGAGES AND DEEDS OF TRUST:** Foreclosure: Payment as Defense: Sufficiency of Evidence. In an action to foreclose a deed of trust, defended on the theory that the note secured thereby, which was in the possession of defendant, had been paid, evidence *held* to warrant a finding that the note had not been paid.

Brannock v. Jaynes.

6. **APPELLATE PRACTICE:** Deference to Finding of Trier of Fact. Great weight is accorded the finding of the trier of the fact, as he has the witnesses before him, sees them, bears them, and, therefore, is in a better position to weigh their testimony than is the appellate court; and this rule is as applicable to a suit in equity as to an action at law.

7. **INSTRUCTIONS:** Declarations of Law: Immaterial Errors. Declarations of law, in an action tried to the court, seldom work a reversal of the judgment, unless they are fundamentally wrong or demonstrate that the court proceeded upon a wrong theory.

8. **EVIDENCE:** Presumptions. Presumptions have no application where the facts are disclosed.

9. **PAYMENT:** Burden of Proof: Presumptions. Where a defendant pleads payment of a note or other obligation, the burden is upon him to prove payment, and that burden is not shifted by any presumption.

10. **MORTGAGES AND DEEDS OF TRUST:** Foreclosure: Payment as Defense: Instructions. In an action to foreclose a deed of trust, tried to the court, defended on the theory that the note secured thereby, which was in the possession of defendant, had been paid, the court refused a declaration of law requested by defendant, that the possession of the note by the defendant is prima-facie evidence that he had paid off and discharged the obligation, and before the court would be warranted in finding for plaintiff, under such circumstances and facts, it would be necessary for him to prove to the satisfaction of the court, by a preponderance of the evidence, that defendant did not lawfully obtain possession of the note and had not paid off the same. *Held*, that the refusal was not reversible error, notwithstanding the provisions of the Negotiable Instruments Law (sections 10029, 10089 and 10160, R. S. 1909), providing that every holder is deemed prima facie to be a holder in due course, that a negotiable instrument is discharged by payment and also when the principal debtor becomes the holder at or after maturity in his own right, and that a holder is the payee or indorsee of a bill or note who is in possession thereof or the bearer of it, since the court, with knowledge of the undisputed fact that defendant was in possession of the note, found that it had not been paid by defendant and that his possession of it was tortious, in the light of which finding any presumption arising from such possession disappears.

Appeal from Cape Girardeau Court of Common Pleas. —*Hon. Robert G. Ranney,* Judge.

AFFIRMED.

*Thomas F. Lane* and *Harry E. Alexander* for appellants.

(1)   The petition sought to foreclose a deed of trust, and was an equitable proceeding and treated as such by the trial court, a jury having been waived; and in such cases, where all the evidence is preserved in the record, the appellate courts will review the evidence and try the case *de novo* as far as practicable and render such decree as ought to be rendered under the law and the evidence.   Turner v. Overall, 172 Mo. 271; Hunter v. Railroad, 149 Mo. App. 253; Meyers v. Schuchmann, 182 Mo. 159; Lewis v. Rhodes, 150 Mo. 498; Dunn v. McCoy, 150 Mo. 548; Ridgeway v. Herbert et al., 150 Mo. 606.   (2)   The undisputed evidence shows that long prior to the institution of this suit by the plaintiff the defendant, Jaynes, the maker of the note in question in the suit, had possession of the same.   This is prima-facie evidence that the said note had been paid off and discharged by the maker; and the declaration of law number two, asked by the defendant and refused by the court, is sound law and should have been given. Section 10160, R. S. 1909; Sections 10029, 10089, R. S. 1909; Hartwell v. Parks, 240 Mo. 537; Fitzgerald v. Barker, 85 Mo. 1; Lipscomb v. Talbott, 243 Mo. 35; First National Bank v. Stam, 186 Mo. App. 439; Chandler v. Hedrick, 187 Mo. App. 672; Priest v. Way, 87 Mo. 16; Joyce, Defenses to Com. Paper, sec. 404; 8 Cyc. 233; 8 C. J., p. 581, sec. 812; McGilvey v. Clement, 6 Mo. App. 598; Topley v. Herman, 95 Mo. App. 537; Bobb v. Litcher, 30 Mo. App. 43; 8 C. J., p. 1003, sec. 1309. (3)   The presumption of law is that one in possession of the bill or note who is primarily liable for the payment thereof is presumed to have paid the same and that he is rightfully in the possession thereof. Sections 10029, 10089, 10160, R. S. 1909; Hartwell v. Parks, 240 Mo. 537; Fitzgerald v. Barker, 85 Mo. 1; Lipscomb v. Talbott, 243 Mo. 35; First National Bank v. Stam, 186 Mo. 439; Chandler v. Hedrick, 187 Mo. App. 672; Priest v. Way, 87 Mo. 16; 8 Cyc. 233.   (4)   Both at

the common law and under the statute, possession of a negotiable instrument, endorsed by the payee, raises a prima-facie presumption of proper transfer to the holder, and delivery must be presumed prima-facie from the possession of a properly endorsed note, which presumption must prevail in the absence of rebutting evidence. Section 10029, R. S. 1909; Chandler v. Hedrick, 187 Mo. App. 672; Priest v. Way, 87 Mo. 16; 8 Cyc. 219. (5) The burden in this case rested upon the plaintiff to establish its case by a preponderance of the evidence; and the burden of proof was upon the plaintiff to prove by the greater weight and preponderance of the evidence that the defendant, A. C. Jaynes, came into the possession of the note fraudulently or unlawfully. Priest v. Way, 87 Mo. 16; Chandler v. Hedrick, 187 Mo. App. 673; 8 Cyc. 233; Clark v. Schneider, 17 Mo. 295; Bank v. Tinsley, 11 Mo. App. 498; Cement Co. v. Stewart, 103 Mo. App. 182; 8 C. J. 980, sec. 1289; 8 C. J. 1010, sec. 1316.

*Wammack & Welborn* for respondent.

(1) An action under the statute to foreclose a mortgage, is one at law and not in equity. White v. Black, 115 Mo. App. 28; Smith v. Finn, 77 Mo. 499; Estes v. Fry, 166 Mo. 70. (2) In an action at law and a trial by the court sitting as a jury, the court's finding upon the issue of fact is as conclusive on appeal as would be the verdict of a jury, and in such a case it is unnecessary to summarize the evidence or comment upon it, and in such case the action of the court upon declarations of law are important only as indicating the theory on which the case was tried. It is likewise unnecessary to set out the declarations of law or to consider the objections thereto. Baumhoff v. Railway, 171 Mo. 125; Gunby v. West, 135 Mo. App. 31; Snyder v. Stemmons, 151 Mo. App. 162; Cook v. Farrah, 105 Mo. 508; Rice v. Arnold, 58 Mo. App. 97; Corrigan v. Kansas City, 93 Mo. App. 177; Gilbert, etc. v. Sheridan, 114 Mo. App. 332; Desteiguer v. Morton & Kenney, 162 Mo. 417; State ex rel. v. Staed, 143 Mo. 248; Bethune v. Railway, 139 Mo. 574;

Rice Stix Co. v. McCluer & Harper, 74 Mo. App. 383; Gibson v. The Bailey Co., 114 Mo. App. 357. (3) In a trial before the court, instructions serve as showing upon what theory the court arrived at the result. Price v. Merritt, 55 Mo. App. 640; Perkins v. School District, 61 Mo. App. 512; Baumhoff v. Railway, 171 Mo. 125; Gunby v. West, 135 Mo. App. 31; Hellmuth v. Benoist, 144 Mo. App. 700; Zahm v. Royal Frat. Union, 154 Mo. App. 82; Cook v. Farrah, 105 Mo. 508; Butts v. Gunby & West, 135 Mo. 31; Pluming Co. v. Hugunin, 156 Mo. App. 74; Smoke Prev. Co. v. St. Louis, 205 Mo. 220; Rothenberger v. Garrett, 224 Mo. 202; McGlothin v. Hardin, 133 Mo. App. 605. (4) Even in an equity case, the appellate court will defer largely to the finding of facts made by the trial court, and this is especially true when the facts depend, to a large extent upon the credibility of the witnesses who testified. Smoot v. Judd, 184 Mo. 508; Kilpatrick v. Wiley, 197 Mo. 123; Waddington v. Lane, 202 Mo. 387; So. Mo. Lbr. Co. v. Crommer, 202 Mo. 504; Lacks v. Butler Co. Bank, 204 Mo. 455; Reynolds v. Hood, 209 Mo. 611; Phillips v. St. Louis Trust Co., 214 Mo. 669; Brown v. Houchin, 154 Mo. App. 261; Walker v. Dobbins, 152 Mo. App. 270; Bigham v. Tinsley, 149 Mo. App. 467; Barnard v. Keathley, 230 Mo. 209; Foster v. Williams, 144 Mo. App. 219; S. W. Mo. Ry. Co. v. Morning Hour etc., 138 Mo. App. 129. (5) Instructions have no place in an equitable proceeding. Schiebel v. Merrill, 185 Mo. 534; Hefferman v. Weir, 99 Mo. App. 301; Hall v. Harris, 145 Mo. 614; Troll v. Spencer, 238 Mo. 94; Wendover v. Becker, 121 Mo. 273; McCollum v. Boughton, 132 Mo. 601; Conran v. Sellew, 28 Mo. 320; Ellis v. Kreutzinger, 31 Mo. 432; Tevis v. Tevis, 259 Mo. 32; Lee v. Lee, 258 Mo. 605; Pew v. Price, 251 Mo. 620. (6) When a debt is once shown to have existed, it is presumed to remain unpaid until the contrary is shown. Carter v. Primm, 47 Mo. App. 305; Deal v. Stegner, 56 Mo. App. 539; Adkinson v. McKay, 186 Mo. App. 399; Griffith v. Creighton, 61 Mo. App. 4; Ferguson & Whalen v. Dalton, 158 Mo. 323;

Winfrey v. Matthews, 174 Mo. App. 714; Rider v. Culp, 68 Mo. App. 527; Barrett v. Kern, 141 Mo. App. 5; Steltmeyer v. Barrett, 145 Mo. App. 534. (7) The party in possession of a negotiable instrument is prima facie the owner of it, but once it is shown to be lost or stolen from the true owner, the presumption is changed, and he must then show not only the consideration he gave for it, but also that he took the paper in good faith in the ordinary course of business. Devlin v. Clark, 31 Mo. 23. (8) Payment is an affirmative defense, the burden of which always and under all circumstances rests on defendant. Powell v. Charles, Admrs., 34 Mo. 485; Winfrey v. Matthews, 174 Mo. App. 713; Steltmeyer v. Barrett, 145 Mo. App. 545; (9) If the testimony discloses that the note has not been paid, it is not requisite that its loss should be accounted for. Stevenson v. Richards, 45 Mo. App. 550. (10) If a promissory note is not due, the mere fact that, it is found in the possession of the maker raises no presumption that it has been paid. 8 Cyc., p. 247. (11) Presumptions are the bats of the law, flitting in the twilight, but disappearing in the sunshine of actual facts. Mockowik v. Railway, 196 Mo. 571; Schaub v. Railway, 133 Mo. App. 450; Kilmore v. M. B. A., 186 Mo. App. 455; Gilpin v. Railway, 197 Mo. 325. (12) Even in the case of a past due note, the possession of the note by the maker raises only a presumption of fact or a rebuttable presumption of payment. Such a presumption supplies the absence of affirmative proof, but when affirmative evidence is offered on the point, the presumption of fact takes flight and disappears. If, after the testimony is all in there is an issue of fact between the parties, affirmed on one side and denied on the other, such issue of fact will be for the jury to determine. Glassman v. Harry, 170 S. W. 404; 182 Mo. App. 308; Sowders v. Railway, 127 Mo. App. 119; Morton v. Hiedorn, 135 Mo. 617. (13) Upon the appearance of the facts in evidence the presumption of fact takes flight and no longer has a place in the case. Osborne v. Railway, 179 Mo. App. 259; Advertising Co. v. Pub. Co., 146 Mo. App. 103; Schaub v. Railway, 133 Mo. App. 444; West-

ern Adv. Co. v. Star Pub. Co., 146 Mo. App. 90. (14) A prima-facie case or prima-facie proof resting upon a presumption of fact, crumbles to the ground when the presumption upon which it rested takes flight upon the appearance of the facts actually proven. Glassman v. Harry, 182 Mo. App. 308; Gilmore v. M. B. A., 186 Mo. App. 455. (15) It is the well established law that a presumption of fact will not be permitted to contradict or overcome facts actually proved. Sowders v. Railways, 127 Mo. App. 124; Morton v. Hiedorn, 135 Mo. 617; Glassman v. Harry, 182 Mo. App. 308. (16) To say in an instruction to a jury in the case of a rebuttable presumption and when evidence has been introduced upon the question, that the law presumes so and so, and that such presumption must be overcome or overthrown by evidence, is sometimes useless, sometimes prejudicial and always illogical. State ex rel. Fire Ins. Co. v. Ellison et al., 187 S. W. 26. (17) There is a distinction between burden of proof, in the sense of making out a case, and burden of proof in the sense of the duty of going forward with the evidence. The burden of proof in the former sense never shifts but remains with the plaintiff throughout. Burden of proof in the latter sense does shift from side to side, according to the state of the evidence. That is the duty of going forward with proof shifts from one side to the other, but not the burden of making out a case or establishing an affirmative defense. Taylor v. Telegraph Co., 181 Mo. App. 299.

REYNOLDS, P. J.—This is an action by plaintiff against A. C. Jaynes and his wife, and A. D. Wilcox, trustee.

The petition states that on September 8, 1908, the defendant A. C. Jaynes, for value received, executed and delivered to plaintiff his promissory note for $4000, due and payable five years after date, with interest thereon payable semiannully at the rate of seven per cent. per annum from date until paid; that a copy of the note is attached, but that plaintiff is unable to produce the

original or to file it for the reason that defendant A. C.
Jaynes has obtained possession of it without having any
legal right thereto and has neglected and refused and still
neglects and refuses to deliver the possession of the same
to plaintiff as lawful owner thereof.    It is further
averred that on the date of the note A. C. Jaynes and his
wife made, executed and delivered to defendant Wilcox,
as trustee, their deed of trust conveying to Wilcox the
legal title to certain real estate described, situated in
the city of Cape Girardeau; that this deed of trust was
duly filed for record and is upon the condition that if
the defendant A. C. Jaynes has failed to pay the interest
on the note accruing September 8, 1911, according to the
tenor of the note and deed of trust, the entire amount,
both principal and interest should become due and pay-
able by reason of the default made in the payment of the
interest, and defendant having neglected and refused to
pay any portion thereof, the entire amount of the note
and interest became due and payable.    Judgment is
prayed against A. C. Jaynes for the sum of $4000 and
interest due according to the terms of the note and that
a time be fixed by the court for the payment of the judg-
ment, and that the equity of redemption of A. C. Jaynes
and wife and all their right, claim and interest be fore-
closed and forever bound and upon default in the pay-
ment of the judgment within the time specified, that the
property be ordered sold upon such terms, manner and
notice to be fixed by the court and that a special
commissioner be appointed to carry out the decree of the
court herein and for all proper relief.

The answer of Jaynes and wife admits the execution
of the note and deed of trust as averred and avers that
"on or about the —— day of February, A. D., 1911," de-
fendant A. C. Jaynes fully paid off and discharged the
debt described in the note and deed of trust mentioned in
the petition, to the City Bank of Bloomfield, Missouri,
that bank at the time being the agent and trustee for
plaintiff and being in possession of the note and deed of
trust for plaintiff, and that on the last mentioned date
when defendant paid the debt and interest as aforesaid

the note and deed of trust mentioned in the plaintiff's petition were thereupon delivered to the defendant A. C. Jaynes.

A reply was filed denying this new matter.

The defendant Wilcox filed no pleading.

The cause was submitted to the court, a jury being waived, and at the conclusion of the trial was taken under advisement and continued from term to term until the November term, 1913, when, upon motion filed by plaintiff, the cause was reopened for the hearing of further evidence. The cause was thereupon continued from term to term until the May term, 1914, and then again coming on for hearing both plaintiff and defendant introduced additional evidence and the cause was again submitted, a declaration of law being given at the request of plaintiff, to the effect that if the court, sitting as a jury, found from the evidence that the defendants executed and delivered to plaintiff the note and deed of trust in controversy and that the note has not been paid by defendants to plaintiff, the finding and judgment should be for the plaintiff. And at the request of the defendant the court declares the law to be that if he found and believed from the evidence that the defendant A. C. Jaynes has paid the note in question to any agent or person who had authority from plaintiff to receive payment of the note, then the finding and and verdict should be for the defendant. Defendants also asked another declaration of law, to the effect that if the court believed from the evidence that the defendant A. C. Jaynes, at and prior to the institution of the suit brought for the purpose of foreclosing the deed of trust, had possession of the note in question, and still has possession of the note, the fact of such possession of the note is prima-facie evidence that defendant has paid off and discharged the obligation; and before the court would be warranted in finding for the plaintiff, under such circumstances and facts, if the court believes them to be true, it would be necessary for the plaintiff to prove to the satisfaction of the court, by a preponderance of the evidence, that the defendant Jaynes did not lawfully ob-

tain possession of the note and has not paid off the same. Exception was duly saved to the refusal of this declaration.

Reciting in its finding that the plaintiff and the defendants, Jaynes and wife, had waived a jury by agreement, the court found from the evidence that on September 8, 1908, the defendant A. C. Jaynes, for value received, executed and delivered to plaintiff Brannock his promissory note for the sum of $4000, due and payable five years after date, with interest thereon payable semiannually at the rate of seven per cent. per annum from date until paid; that the note, at the date of the insituation of the action, was in the possession of the defendant A. C. Jaynes, and that he had heretofore refused to deliver the possession of it to plaintiff; that the defendant A. C. Jaynes had paid the interest due on the note up to March 8, 1911, but had not paid to plaintiff any part of the principal of the note or interest thereon from March 8, 1911, to the date of the judgment (June 3, 1914); that the defendant Jaynes is justly indebted to plaintiff Brannock, on account of the execution and delivery of the note, in the sum of $4905, principal and interest due on the note to that date; that defendant Jaynes and his wife executed the deed of trust referred to securing the payment of the $4000 note referred to, conditioned upon the payment of the note at maturity and the interest thereon as it accrued; that the deed of trust was duly filed for record; that the defendant A. C. Jaynes failed to pay the interest on the note accruing September 8, 1911, and all interest payments falling due since that date and that under the terms of the deed of trust the failure of the defendant A. C. Jaynes to pay the interest rendered the note and interest due thereon due and payable at the time of the institution of the suit and that plaintiff was entitled to a foreclosure of the deed of trust under and in accordance with the terms thereof; that defendant Wilcox, the trustee, had no interest therein except as trustee under the terms of the deed of trust.

The court accordingly rendered judgment against defendant A. C. Jaynes in the sum of $4905 on account

of the debt and interest due thereon to date, the judgment to bear seven per cent. interest and A. C. Jaynes to be granted thirty days from the date of the judgment in which to pay the judgment to the clerk of the court for the benefit of plaintiff, together with the costs taxed against A. C. Jaynes; that, on failure to pay this within thirty days, all the right, title and interest of A. C. Jaynes and his wife in and to the real estate described be foreclosed and the real estate be sold under and according to the terms and conditions of the deed of trust at the place and upon such notice as required by the terms and conditions of that deed, the court appointing the sheriff of Cape Girardeau county special commissioner to sell the property in accordance with the terms of the deed of trust, out of the proceeds first paying the costs of foreclosure and the judgment of plaintiff, with interest and costs and pay the balance, if any, to A. C. Jaynes or his legal representatives, reporting his proceedings to the next term of the court. From this judgment, after filing a motion for new trial and excepting to that being overruled, defendant A. C. Jaynes has duly appealed to our court.

As A. C. Jaynes was the party who conducted the defense herein, we, for brevity, refer to him as if the sole defendant.

Objection was duly made to the action of the court, had at the November, 1913, term thereof, in reopening the cause. As no term bill of exceptions was then filed, we cannot notice the complaint now made to that action. It is not out of place, however, to say that by participating in the trial after the cause was reopened, without then objecting, and then introducing evidence, defendant waived any error there may have been in that action.

This is an action for the foreclosure of a deed of trust, brought under the provisions of sections 2828, 2829 and 2934, Revised Statutes 1909, these sections being in article 2, chapter 30, of that revision. It has been held at an early date that proceedings in our state under these sections to foreclose a mortgage or deed of trust are at law and not in equity, although it has also been

Brannock v. Jaynes.

held that these provisions have not divested courts of equity of their jurisdiction to foreclose mortgages or deeds of trust in the nature of mortgages. Without referring to the authorities at length, see Carr v. Holbrook et al., 1 Mo. 240; Smith v. Finn, 77 Mo. 499; State ex rel. Wyandotte Lodge, etc., v. Evans, Judge, et al., 176 Mo. 310, 75 S. W. 914.

This action was tried as one at law, a jury having been waived, and there are no elements of equity taking it outside of and beyond the statute. It is to be here treated as an action at law.

As the finding and conclusion of the learned trial judge is challenged as not being supported by the evidence, we have read all of it. This being an action at law, the finding of the trial judge is conclusive on us, if supported by substantial evidence, unless it appears that the law was misapprehended or misapplied. The learned trial judge was exceedingly liberal in the admission of evidence, announcing, in overruling an objection to a question, that it seemed to the court that the decision in the case would largely be determined by the credibility of the witnesses and that the court was very anxious to find out who was telling the truth about the matter. Again the court remarked: "This whole case, it seems to me, will have to turn upon who is telling the truth about all these transactions." These remarks of the trial judge not only demonstrate his desire to do justice but illustrate the wisdom of the rule which accords great weight to the finding of the trier of fact. He has the witnesses before him, sees them, hears them, and is in a much better position to weigh their testimony than an appellate court can possibly be. This is as applicable to a suit in equity as to an action at law and in the latter to a trial before a jury.

The evidence was very conflicting on a number of material ponts. That introduced on behalf of plaintiff tended to show that one of the semiannual installments of interest upon the note not having been paid when due, plaintiff caused the property to be advertised for sale under the deed of trust. Pending that sale plaintiff

197 M. A.—11

and the defendant A. C. Jaynes met at Bloomfield about January 14, 1911, and plaintiff gave Jaynes one year extension from that date on the note, defendant paying off another note for four thousand dollars, executed by defendant and secured on a farm in Illinois, also paying off two other notes for lesser amounts, as well as the cost of advertising the sale under the deed of trust now before us, and accrued interest on this note. Whether this note and deed of trust securing it were with the bank in Cape Girardeau or with the one in Bloomfield, is sharply in issue and not very clear. It does appear that they had been originally left with the Bloomfield Bank but when the default was made in the payment of the interest, that bank sent them to its correspondent bank at Cape Girardeau, with directions to advertise the sale, the property being in the city of Cape Girardeau. After that sale was called off, the officers of the Cape Girardeau Bank testified that in compliance with the request that had been made over the telephone to that bank by the officers of the Bloomfield Bank, the note and deed of trust had been sent to the Bloomfield Bank, apparently along with the bill for some accrued interest and for the cost of advertising the sale under the deed of trust. The officers of the Bloomfield Bank, on the contrary, denied making the request or ever having received the deed of trust or the note from the Cape Girardeau Bank, and those officers and plaintiff testified that when the arrangement which was made between plaintiff and defendant for an extension of the time of payment of the note for one year, the note and deed of trust were still with the Cape Girardeau Bank, the plaintiff testifying that he did not see them at the Bloomfield Bank on that occasion. That extension of a year, according to plaintiff's theory, would have carried the note over to about January, 1912. Defendant, however, denied that there had been any definite extension of the time of payment of the note in January, 1911. At any rate, a year and some months after the extension had been granted, no interest having been paid in the meantime, the Boomfield Bank wrote a letter to

defendant, of date April 3, 1912, the letter addressed to defendant at Puxico, where he and his son carried on a store, in which letter it is stated: "You will please call at First National Bank of Cape Girardeau and pay the note sent them for collection on you by M. W. Brannock, as he has just went through a fire and needs his money to rebuild, and oblige." This note was opened by defendant's son, who, sending it to his father, wrote on it: "This letter came to me here. Evidently there is something wrong. Investigate at once and answer this communication." Defendant admitted receiving this letter as forwarded by his son, but said he never paid any attention to the communication. In June, 1912, defendant met Frank A. Brannock, a brother of plaintiff, who was bookkeeper at the Bloomfield Bank, in the city of Cape Girardeau, where defendant resided, and being asked about the matter, said that he had paid the note to the Cape Girardeau Bank, first saying he had paid it about a year before, then maybe eighteen months before, and on Frank telling him that plaintiff never got the money, defendant put the time of payment at six or eight months before, and finally said he did not remember when he had paid it, but claimed he had paid it to the Cape Girardeau Bank; said he would show it to witness and Wilcox if they would go over to Puxico where it then was. They subsequently went to Puxico and defendant there exhibited the note in controversy to them, in the presence of his son, and claimed that he had paid it partly in cash and partly by checks which he had from other parties in his favor, paying altogether something over $4000. The cashier said in this conversation at Puxico, according to defendant, that he had no recollection of such payment ever having been made to him or to his bank. In his deposition the cashier stated positively that this note had not been paid to him; that the only note for $4000 which defendant paid at the Bloomfield Bank was the note secured on the Illinois farm. There was no pretense by defendant that he had paid it to anyone but Wilcox. Plaintiff himself denied that anyone had ever paid him for it. Defendant

produced the note from a safe in his store at Puxico, but did not produce the deed of trust, which, in his answer, he averred had been delivered to him · at the same time that the note had been delivered to him by the Bloomfield Bank, testifying that the papers which had then been delivered to him at Bloomfield were delivered to him in an envelope by Wilcox, the cashier, and that he did not look at them at the time, but supposed that the deed of trust securing this note was among them.

Persons who testified to being present in the Bloomfield Bank on January 14, 1911, when defendant was there, testified that he had not been there in February, 1911, when defendant claimed to have been there and made payment and had taken up the $4000 note in controversy, and testifying that they were officers and employees of the bank, denied that in their presence defendant had made any payment to Wilcox, the cashier. The note in controversy, on being · produced, appears to have been indorsed in the name of plaintiff and by his authority, as it appears, without recourse, and was not marked or stamped as paid. Defendant explained this by saying that he had told the cashier of the Bloomfield Bank that he was largely involved at the time and did not want the deed of trust satisfied nor have it appear of record that he had paid it off, as he intended to turn it over to his son and use it as a kind of "blanket mortgage" to protect himself against his creditors. All the other notes, which beyond question defendant had paid, had been marked or stamped as paid. In his deposition taken in the case defendant had testified that he had no conversation with the cashier beyond telling him that he wanted to pay off the note. Testifying at the trial, however, he said he had explained this matter to the cashier as above set out.

It appeared that the cashier Wilcox had been indicted for embezzlement in connection with the bank, that bank having failed and closed its doors in October succeeding the time of the transaction which plaintiff claimed to have had with it about the note, and his testimony

appears in the case in the form of depositions and, as before noted, he most emphatically and explicitly denied ever having received payment of the note from defendant.

When testifying as a witness in the trial of the case, defendant testified that in paying off the $4000 note to the Bloomfield Bank he had paid one $1000 bill, possibly two $500 bills and smaller currency in denominations that he could not state, but which ran five and ten dollar bills, as he thought, and the balance in checks that he had taken up at his store at Puxico, turned in there by laborers at a saw mill and railroad, this Puxico store cashing them for the accommodation of their customers; and defendant testified that on December 23, 1910, he had obtained the $1000 bill from a bank at Cairo, Illinois, and the two $500 bills from some bank but he did not remember what bank.

There was testimony by way of depositions from officers and employees of the Cairo Bank tending to show that no $1000 bills had been handled or passed out by their bank, or been in their possession December 22 or December 23, 1910, on which latter date defendant claimed he had secured a thousand-dollar bill from that bank when he cashed a draft for $2500. These witnesses testified, in effect, that it was not a common occurrence for the bank to hand out thousand-dollar bills, one of them, an assistant cashier, saying that it would be so uncommon that he thought he could remember it, but none of them remembered the occasion upon which defendant cashed the $2500 draft.

Defendant testified, both orally and by deposition, and was examined and cross-examined at great length as to his financial condition and transactions in the first part of 1911, and for a year or so prior thereto. It is not exaggerating or misstating his testimony to say that it was rather contradictory and not very consistent in itself. He testified that he had been accumulating the four thousand dollars for a long time, possibly commencing in December, 1910, to meet this $4000 incumbrance; had not banked the money; had carried it on his person or at his home; was afraid to

bank it lest his creditors should get hold of it; had carried on his person or at his home the one thousand dollar note from December 23, 1910, until he paid it out in February, 1911, on this four thousand dollar note. There was testimony elicited from him by plaintiff's counsel and from other sources tending to show that in February, 1911, when defendant claimed he had paid off the note in controversy, he had but small sums in bank, the disbursement of all of which was traced, and had been engaged in no transactions in which he could have realized four thousand dollars and that he was not then pressed by creditors, and beyond this four thousand dollar indebtedness, which was not due in February, 1911, he had but little indebtedness outstanding and that plaintiff, so far from pressing him on this debt, had extended it for a year and there was no installment of interest due on it until April, 1911.

This is a very brief summary of the testimony, but enough to show, as stated by the learned trial judge, that the determination of the real point in this case was the fact of payment or nonpayment of this note. The trial court fully recognized that in the two declarations which were given, one for plaintiff and the other for the defendant. We cannot weigh the evidence on that issue but as it is challenged as a whole we have read all of it and are satisfied that there was substantial evidence in the case warranting the learned trial court to find as he did. As he remarked, it was a case turning almost exclusively on the credit to be given to the witnesses, and all the material witnesses in the case, the witnesses testifying to the material facts in it, defendant himself testifying as to the circumstances under which he claimed he paid the note and the manner and means by which he claimed to have paid it, were before the court, and he was entirely competent, from his long experience on the bench, to determine the credibility of those witnesses. His finding on that is conclusive on us as an appellate court, there being substantial evidence sustaining that finding, unless it appears that he misconceived or misapplied the law.

We have set out the declaration of law which the defendant asked and on the refusal of which error is now assigned. It is to be borne in mind that this case was tried before the court without a jury and that declarations of law, unless fundamentally wrong or demonstrating that the trial court proceeded upon a wrong theory, or a misapprehension of the law, are not very material and seldom call for reversal.

Reading the proceedings at the trial with great care, we are satisfied that the learned trial judge thoroughly understood the issues and the law applicable and that the fact, clearly admitted by plaintiff, that the possession of the note was in defendant, found that that note had not been paid. In the light of the positive facts in the case which led the court to that conclusion, presumptions disappear. Against this presumption, which appellant invoked by the declaration of law asked, is the rule that where a defendant pleads payment of a note or other obligation, the burden is upon him to prove payment and that burden is not shifted by any presumption.

The learned counsel for appellant cite us to sections 10,029, 10,089, 10,160, sections in our Negotiable Instrument Law, Revised Statutes 1909, in support of the declaration asked. Section 10,029 provides:

"Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

Section 10,089 provides:

"A negotiable instrument is discharged: (1) By payment in due course by or on behalf of the principal debtor; . . . (5) when the principal debtor becomes the holder of the instrument at or after maturity in his own right."

Section 10,160 defines a holder to be, "the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof."

We are unable to see how these sections aid appellant. The very root and foundation of the claim here is that the defendant was not a bona-fide holder and that his possession was tortious. That was the case which the trial court had before it for determination and which it determined adversely to the defendants. Even with this declaration of law given, or with that before him as the law, his finding is conclusive that in the case at bar the mere possession of the note by the appellant, the maker of it under the facts here present, carried no prsumption of ownership.

Learned counsel for appellant place much reliance upon the decision of our Supreme Court in Priest v. Way, 87 Mo. 16, and of our court in Chandler v. Hedrick, 187 Mo. App. 664, 173 S. W. 93. The facts present in those cases in which the rule of presentation is stated, bear no analogy whatever to the facts here before us.

"Presumptions have no place in the presence of the actual facts disclosed." They are "the bats of the law, flitting in the twilight but disappearing in the sunshine of actual facts." [Mockowik v. Kansas City, St. J. & C. B. R. R. Co., 196 Mo. 550, l. c. 571.]

In State ex rel. Detroit Fire & Marine Ins. Co. v. Ellison et al., Judges (not yet officially reported, but see 187 S. W. 23), our Supreme Court, reviewing many cases and disapproving what was held in several of these as to instructions on presumption, has said (l. c. 26, 27):

"To say, however, in an instruction to a jury, in the case of a rebuttable presumption, and when evidence has been introduced upon the question, that 'the law presumes' so and so, and that such presumption 'must be overcome' or 'overthrown' by evidence, is sometimes useless, sometimes prejudicial, and always illogical."

We think that declaration was properly refused; most certainly, in a case such as this, tried before the court as a jury, its refusal is not reversible error.

Considering this as an action at law, tried by the court without the intervention of a jury, we find no reversible error in the result reached. We may even go so far as to say, that our own consideration of the evidence, and we have read all of it with great care, would lead us to the same conclusion.

Great stress is laid upon the fact that Wilcox, the cashier, is a convicted embezzler. The trial judge had that fact before him and also the testimony of Wilcox in the form of deposition. He might have entirely discarded all of his testimony. But on the very remarkable testimony of defendant himself, there was substantial testimony warranting the trial court to find that the note had not been paid. That was the real point.

The judgment of the circuit court is affirmed. *Allen* and *Becker, J.,* concur.

